## B. L. T. BOURLAND *et al.*

*v.*

## THE SPRINGDALE CEMETERY ASSOCIATION.

*Filed at Ottawa October 11, 1895.*

1. CEMETERIES—*cemetery property not necessarily of a trust character.* There is nothing in the nature or objects of a cemetery association which necessarily impresses upon its property or revenues a trust character.

2. SAME—*effect of charter provision that association shall hold lands in trust.* A provision in the special charter of a cemetery association that it shall hold the lands to be purchased "in trust, for the purpose of interment and a repository for the dead forever," does not impress a trust character upon the revenues derived by the association from the sale of burial lots, concerning which a different charter provision is made.

3. SAME—*charter duty to keep grounds in order and repair.* A provision in such charter that the cemetery association shall, out of the proceeds of sales of lots, "keep the grounds in repair and in good order," does not charge the association with the duty of caring for and keeping in repair lots which have been sold to individuals for burial purposes.

4. SAME—*surplus revenues from sale of lots belong to members of the association.* Under such charter, after suitable provision is made out of the proceeds of sales for keeping the grounds in good order and repair, the surplus belongs to the members of the association, and may be lawfully divided among them.

5. SAME—*when bill to administer cemetery property as a trust will be dismissed.* A bill framed upon the theory that such an association is a charitable trust, the lot owners being the beneficiaries, and seeking to prevent the devotion of any part of the association's revenues to the private use of members, which calls upon the court to virtually take and administer the cemetery as a trust, and which does not show the association has failed to keep the grounds, excepting lots sold for burial purposes, in good order, is properly dismissed for want of equity.

*Bourland* v. *Springdale Cemetery Ass.* 56 Ill. App. 298, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. THOMAS M. SHAW, Judge, presiding.

In this case a demurrer was sustained to a bill in chancery, and the complainants electing to abide by their bill, a decree was rendered dismissing the bill at the complainants' costs, for want of equity. That decree has been affirmed by the Appellate Court on appeal, and this appeal is from the judgment of affirmance.

The bill was brought against the Springdale Cemetery Association and Hervey Lightner, by Benjamin L. T. Bourland, Frank T. Corning and James Deal, who bring their bill as well for themselves as for all other lot owners in the Springdale cemetery interested in the litigation and choosing to come in and become parties thereto. It alleges, in substance, that the Springdale Cemetery Association was incorporated by a special act of the General Assembly of the State of Illinois, approved and in force February 14, 1855, the act being, by its terms, made a public act; that after the passage of the act the Springdale Cemetery Association became duly organized, and accepted the trust delegated by the act, and has ever since been doing business under the provisions of its charter; that in 1854 those who afterwards became corporators in the association, or some of them, purchased, for the purposes of the proposed association, a quarter section of land in Peoria county, their purchase being evidenced by a contract for a deed, and that on or about September 5, 1856, they obtained a deed conveying the land to the association; that in the contract and in the deed the consideration for the land was stated to be $10,380, but the actual price paid by the association was only $3000; that ten years later the association bought a small strip of land adjoining the quarter section, containing about seven acres, and paid $600 therefor; that afterward the association bought another tract adjoining the quarter section, containing about twenty-seven acres, paying $4500 therefor; that at the time of these several conveyances the association took title to the lands conveyed, in form in fee simple, but in fact only as trustee,

under the provisions of its charter; that the charter of the association provided, among other things, that out of the proceeds of the sale of lots the corporation might first pay the purchase money of the land purchased for cemetery purposes, the expense of grading, laying out and fencing the grounds, and all necessary expenses, with interest; that after such payments the association should provide for keeping the grounds in good order, and that when the terms and provisions of the charter should be complied with the title to the land should vest in the corporation as trustee, and that it should hold the same in trust for the purposes of the interment and a repository of the dead forever, and the corporation and its members were by the charter forever prohibited from selling, conveying or appropriating any part of it for any other purpose than that contemplated by the charter.

The bill alleges that the complainants are, and for many years have been, owners of lots in the cemetery; that about two thousand lots have been sold to different parties; that the other owners are scattered, and many of them are absent and unknown, but they are interested in the litigation, but are too numerous to be made parties to the suit; that the association, since its organization, has been continually in receipt of money from the complainants and other lot owners upon bills which it has presented to and collected from them for work done in and upon the cemetery, such as digging graves, caring for lots sold, making walks, digging up or setting out trees, and from the sale of hay, timber, and from pasturage and other similar accounts, all of which money so collected forms a part of the revenues of the association, and is to be accounted for as such; that the association has received divers legacies and gifts to it as a cemetery, or to some of its officers for cemetery purposes, which legacies and gifts also constitute a part of the income of the association to be accounted for; that the association has incurred some expenses and indebtedness in the con-

struction of fences, roads, bridges, grading and improving the cemetery and the laying out of lots therein, but how much the complainants have no means of knowing, but they charge that such indebtedness has long since been fully paid and discharged by the association out of the proceeds of lots in the cemetery, and the association is not now indebted to any one in any sum whatsoever; that the cemetery is now, and for many years has been, in the possession of the association, holding, under its charter, as trustee, as aforesaid, and that all the improvements therein, including the purchase of the land, have been fully paid for by the association out of the proceeds of lots sold or out of the income of the association; that the complainants and other lot owners have erected. handsome monuments and made other improvements without cost to the association, and the cemetery is in all respects a quiet resting place for the dead, and a very large number of citizens of Peoria have purchased lots and buried the remains of their deceased friends therein; that they, with other lot owners, have expended over a quarter of a million of dollars in improving the cemetery, and have also paid the association for the ground purchased and all expenses which have been incurred thereon, and the complainants charge that all the income and property of the association, of every kind, since its debts were paid and since its income was sufficient to pay its debts, belong, in equity, to the complainants, and the same now amount to between $100,000 and $200,000; that the association now consists of Hervey Lightner and other persons, managers, directors and members thereof, and that Lightner manages everything, the other directors and managers consisting of his family, children, servants and employees, and that they are subject entirely to his control in the management of the cemetery, and conform to his will and do as he directs.

The bill further alleges that there have been erected on the cemetery grounds divers dwelling houses, offices

and out houses for the use of officers and employees of the association; that there has been constructed thereon a large vault, called a public vault, for a temporary repository for the remains of dead to be interred in the cemetery; that the grounds have been enclosed with fences; that divers roads and driveways have been laid out and graded in the grounds to afford access to the lots sold and to be sold in the cemetery; that in time to come more roads and driveways will become necessary, all of which improvements are, and will be for all time to come, valuable appurtenances to the lots sold and to be sold in the cemetery; that there is a stream of water flowing through the grounds, and that the grounds are greatly diversified by hill and dale, and that by suitable ornamentation and embellishment the same are capable of being greatly beautified; that in order to keep up the improvements and to construct such others as may be needed, a perpetual income will be necessary, but if the members of the corporation are permitted to take to themselves the proceeds of the sale of lots and divide the same among themselves, then, when all the lots shall have been sold and the proceeds divided among them, there will be no remaining sources of income available for the purposes of keeping the grounds, buildings, vaults, fences, roads and driveways in repair, or for the erection of others for the improvement or beautifying of the cemetery, and it will go to ruin and become unsightly; that very many lots in the cemetery have been suffered to go to ruin and decay; that the grave of Hon. Thomas Ford, late Governor of Illinois, is, and for many years last past has been, covered with a thick growth of weeds and rubbish, and is wholly unsightly; that very many other lots in the cemetery are now, and for many years last past have been, wholly uncared for; that the graves are sunken, the ground overgrown and matted with weeds and rubbish, and that such lots are an eyesore, and greatly detract from the value of other lots; that the

association is in the habit of charging, and its uniform custom is to charge, lot owners, in addition to the sum paid by them for their lots, a sum ranging from $5 to $25 annually for keeping the weeds cut and the lots cared for; that many families pay these charges, but that families become extinct, other families move away, and as to all such families their lots go to ruin and decay and impair the value of the lots of the complainants and all lots in the cemetery, and the complainants charge that in the course of a few years the grounds will, unless the funds of the association are preserved for their care, become overgrown with trash, and a scandal and disgrace, and the cemetery become a ruin; that if the income and revenues of the cemetery shall be applied to the uses of the cemetery, instead of being diverted therefrom, the association would have funds sufficient to keep the cemetery perpetually in good order.

It is further alleged that Lightner and the other unknown directors of the association, repudiating the trusts in the charter, and in gross violation of their duties as trustees, and in gross wrong to the complainants in the premises and property, give out, state and claim that they are the owners of the cemetery, and that they intend to set aside a part, only, of the income of the cemetery for the care of the grounds, not including the lots sold, and that all the balance and remainder of the income of the association they will hold and treat as the private property of the association, and will divide the same among the members of the association for their own private use, and in pursuance of such unlawful conspiracy the association has heretofore divided to the individual members of the association, for their private use, the money and property of the association under pretense of dividends to them, but how much the complainants do not know, but charge that the sum is large, and they believe it will exceed $100,000; and the directors of the association now state and threaten that they will here-

after divide and pay to the members, for their private use, large sums of money belonging to the association, under pretense that they, as individuals, are entitled to have the same paid to them as dividends or for some interest or some stock they claim to have and hold in the association, all of which money so paid is the property held by the association in trust, and the same belongs to the association, or to the lot owners of the association, under the provisions of its charter.

The bill further shows that no member of the association, under its charter, has ever held, or ever could hold or have, any stock or share in the association; that no provision was made in the charter for the issue of any stock, or personal ownership of any stock or share, or personal or individual interest or ownership, by any person or individual whomsoever; that neither the association nor any individual, except as they are lot owners in the cemetery, ever had or could have any interest in the property of the association, but that all the association, and all its revenues, receipts, income and property, of every kind and nature, are the property of the association, and belong exclusively to the association for the permanent care, tending and keeping of the same for the purposes of interment of the dead for all future years.

It is further alleged that the association, conspiring to cheat, wrong and defraud the complainants and the other lot owners, and those who may hereafter purchase lots in the cemetery, have charged grossly extravagant prices for lots in the cemetery, and have appropriated, under the pretenses aforesaid, the income of the cemetery, as aforesaid, and have diverted large sums of money from the association and from its proper purposes, by pretenses known to themselves, to the private uses of the individual members of the association; that the charter provides that the association shall appoint a treasurer, to hold office for one year and until the election and qualification of his successor, and that the treasurer

shall give bond for the faithful performance of his duties, but the complainants do not know or believe that the board of directors has ever appointed a treasurer for the corporation, or if one has been appointed, they do not believe that any adequate security has been given by any treasurer; that the complainants have no security for any of the funds of the association, but all its funds are liable to come into the hands of Lightner and his servants, agents and employees, and they are liable to be, and probably will be, frittered away without there being any responsibility or security therefor, to the great and irreparable loss and damage to the complainants and other lot owners; that the affairs of the association are kept concealed and carefully guarded, so that no one can find out or know anything about the management of its property.

It is further alleged that the cemetery is held and owned by the lot owners and those who may hereafter purchase lots therein; that they have paid in full for the same and all its property, and they have, in equity, an absolute title to the same, and an absolute right to have the cemetery and all the income thereof held in trust for the uses in the charter expressed, and have, in equity, a right to an accounting by the association, and the right to have all the income of the association secured to the lot owners, and to have it placed beyond the reach of peril, fraud or concealment, and have the right to have the trustees of the association removed for gross malfeasance and misbehavior as trustees, and to have another trustee appointed to manage and control the property under the charter, who shall invest the funds where the investment shall be under the control of the court and may be known to all lot owners. The bill further alleges that the complainants have a right to have an election, by the lot owners, of directors and trustees, under the charter, in which the complainants and all lot owners shall participate, and that no other person, nor any asso-

158—30

ciation or company, has any right to participate in such election, except they may be lot owners in the association.

The bill prays for an answer under oath, and propounds a large number of interrogatories to be answered by the defendants, and prays for an accounting by the defendants, and for an ascertainment, by evidence, as to who are the lot owners in the cemetery and have a right to control and direct the same, and have a right, as lot owners, to elect officers and managers of the association, under the charter and the authority of the court, and that a public meeting of the lot owners be called, and that public notice of the time and place for an election by the lot owners, of directors, officers and managers of the association, under the charter, be given; that the officers and directors now in control of the association be removed and dispossessed from their trust and from all possession and charge of the assets of the association, and that they yield possession and control of the same, and its books, papers and assets, to some fit and proper person whom it might please the court to appoint as receiver, and that the receiver may continue to hold and manage the property, under the orders of the court, until the court shall make order to the contrary; that if the court should decide that the lot owners have not the right to elect directors, the association be removed as trustee, and required to surrender all property of the association to some suitable and proper person to be appointed by the court as trustee for the property, under proper and suitable bond, with full power and authority to take charge of the cemetery and to hold and manage the same as trustee for the lot owners, with orders to make and file with the court, at frequent intervals, full, true and correct reports of all his accounts and all his doings as such trustee, or, in case the court should be of the opinion that such course is not for the best interests of the lot owners, that the court direct the association to specifically perform the duties in the charter imposed upon it, under the

order of the court, and that it make frequent and full report of all its doings and of all investments of money which shall come to its hands, so that the complainants and lot owners can see and know that their funds are not subject to encroachment, and are safe. The bill also contains a general prayer for relief.

H. W. Wells, for appellants:

The defendants took the lands described in the bill in trust for a cemetery. The objects and purposes for which the corporation was created form an essential part of the charter. *Minturn* v. *LaRue,* 64 U. S. 435; *Korn* v. *Mut. Ass. Soc.* 6 Cranch, 192.

A court of equity always has jurisdiction of any misappropriation or malfeasance of a trust. It will search the conscience of the trustee. It will enforce a trust, or it will remove a trustee and appoint another. *Brower* v. *Callender,* 105 Ill. 88; *Coats* v. *Woodworth,* 13 id. 654; *Board of Education* v. *Bakewell,* 122 id. 340.

In case of waste or perversion of trust property, on account of the inability or indisposition of the trustee to execute the trust, equity may seize the property or fund and place it in the hands of another trustee who will execute the trust. *Ward* v. *Farwell,* 97 Ill. 593.

It was held error to dismiss a bill brought to enforce a trust for the Illinois Agricultural College when the trustees were unable or unwilling to discharge the trusts assumed. The court will, in such case, take the property from the directors and enforce the trust. *Attorney General* v. *Illinois Agricultural College,* 85 Ill. 516.

Equity has jurisdiction in all questions involving the administration of trusts. *Sherman* v. *Leman,* 137 Ill. 98.

Equity will not permit a trust to fail because of the malfeasance or wrong of the trustee, but will take the execution of the trust into its own hands. *Gillett* v. *Hickling,* 16 Ill. App. 392; *Norton* v. *Hixon,* 25 Ill. 439.

From the very necessities of the case equity will take jurisdiction to enforce the trust. *Dodge* v. *Cole*, 97 Ill. 338.

A trustee must not deal with the trust property for his own benefit. *Roseboom* v. *Whittaker*, 132 Ill. 88; *Ellis* v. *Ward*, 137 id. 509; *Dwight* v. *Blackman*, 2 Mich. 330; *Sheldon* v. *Rock*, 30 id. 296; *Terwilliger* v. *Brown*, 44 N. Y. 237; *Colton* v. *Field*, 28 Ill. App. 363; *Stickney* v. *Goudy*, 132 Ill. 228.

The remedy for a breach of trust is the removal of the trustee and the appointment of a new trustee,—not setting aside the trust. *Brower* v. *Callender*, 105 Ill. 88.

Where the trustee appropriates the trust fund, fraud is presumed, and equity sets aside the fraudulent act and removes the trustee. *Towle* v. *Ambs*, 123 Ill. 414; *Lehman* v. *Rothbarth*, 111 id. 185.

The court must remove the trustee who has placed himself in a position antagonistic to the trust. The trustee can claim no benefit or compensation. Such an act is fraudulent. *Scanlan* v. *Scanlan*, 134 Ill. 640; *Ennor* v. *Hudson*, 28 Ill. App. 459; *Richards* v. *Barrett*, 5 id. 510.

If we want to know the rules of equity we must look at the modern instead of the more ancient cases. *Sir George Jessel*, 13 Ch. Div. 710.

In *Minturn* v. *LaRue*, 64 U. S. 435, the court holds that "if any ambiguity arises out of the terms used by the legislature in a charter it must be resolved in favor of the public." This decision has been so often referred to we may regard it as the settled law of the land. *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 422; *Fanning* v. *Gregory*, 16 How. 524.

JACK & TICHENOR, for appellee.

Mr. JUSTICE BAILEY delivered the opinion of the court:

The theory of the bill in this case seems to be, that the Springdale Cemetery Association is a corporation organized for the administration of a charitable trust, and that those who now own or may hereafter purchase' burial lots in the cemetery are the beneficiaries of the

trust; that the association not only holds the lands purchased or acquired by it in trust for cemetery purposes, but that it holds all revenues arising from the sale of burial lots or from other sources upon a like trust, and that none of its revenues can be lawfully devoted to any other purpose; that the complainants and the other lot owners, having the beneficial title to all its property and assets, have the right, in equity, to call it to account for any mal-administration of its trust, and, with the aid of a court of equity or otherwise, to control the management of its affairs. The violations of the trust charged in the bill consist mainly in having heretofore distributed a considerable portion of its revenues, derived from the sale of burial lots or from other sources, to its members for their private and individual use, and it is alleged that it proposes and threatens to distribute to its members, for their private and individual use, other large portions of its revenues derived from like sources. From these premises the following conclusions are sought to be reached: (1) That the lot owners form the constituency entitled to elect directors and control the affairs of the association, and that the court should aid them in the exercise of that right; or, (2) if that position is not sustained, that for violations of its trust the association and its directors and officers should be removed and a new trustee appointed to execute the trust; or, (3) if the court should not be disposed to grant that measure of relief, that the association and its officers and directors be required to account for all assets and revenues which have heretofore come into their hands, and that they be charged with the same as trust funds, and be required to administer the trust according to the provisions of the charter of the association, and under the direction, control and supervision of a court of chancery.

There is nothing, so far as we are aware, in the nature or objects of a cemetery association which necessarily imposes upon its property, assets or revenues a trust

character.   That, manifestly, must depend upon the terms of the charter or other instrument under and by virtue of which its property, assets and revenues are acquired and held.   If a trust exists, it is conventional ; and whether one exists in the present case, and its nature and terms, must depend upon the provisions of the act of the General Assembly by which the defendant association was incorporated.

By the first section of the act, Hervey Lightner and three others, and their associates, successors and assigns, were created a body corporate and politic, under the name and style of "The Springdale Cemetery Association," and were invested with the ordinary attributes and powers of a corporation, and among them the power to take and hold land in fee simple, and personal property, and to sell, dispose of and convey the same.   By the second section it was provided that the affairs of the corporation should be managed by a board of directors, consisting of not less than three nor more than five persons, to be elected annually, and provision was also made for the time and manner of their election.   The third section authorized the corporation, by its by-laws, to provide for other officers, and prescribe the manner of their election or appointment and define their terms of office and duties.   By section 4 the board of directors were authorized to appoint a president of the board, and also a secretary and treasurer, who should hold their respective offices for one year and until the appointment and qualification of their successors.   The duties of these officers were prescribed, the treasurer being required to give bond, and authority being also given to the corporation to require bonds of any of its other officers, and in case of vacancy in the board between the annual meetings, the remaining members of the board were authorized to fill the vacancy.   Section 5 was as follows:

"The corporation shall have power to take and hold, by purchase, gift, grant, devise or otherwise, any quan-

tity of land in the county of Peoria, not exceeding three hundred acres, for the sole purpose of a cemetery and the interment of the dead; and when the corporation shall have acquired such land, and the title thereto shall have vested in it, or in trustees for its use and benefit, for cemetery purposes, as contemplated by this act, the same shall be forever thereafter exempt from all assessments and taxation, and from seizure and sale on execution, or by any order or decree of any court, or from any appropriation of the same or any part thereof for public uses or purposes; and the burial lots into which the land may be divided shall also be exempt from all assessments, taxation, and seizure or sale upon execution or by order or decree of any court, and from any appropriation to public purposes, whether the said lots shall be held and owned by the said corporation or its grantees or assigns. The corporation shall have no power to sell, alienate or in any way convey or appropriate the said land for any other than cemetery purposes, nor shall owners of lots have power to alienate, convey or in any way appropriate any of the lots on said land for any other use or purpose than for the interment of the dead: *Provided, however*, that the corporation may mortgage or convey, in trust, any part of said land which shall not be laid out in lots, for the purpose of raising and securing money to pay the expenses of laying out, fencing and improving said land and fitting it for cemetery purposes and to defray the expenses of the association; but no lots on the part of the land so mortgaged or conveyed in trust shall be sold and conveyed by the corporation until the mortgage or trust deed shall be, as to such lots, discharged, so as to be no incumbrance on such lots."

Section 6 prescribed the mode for the conveyance of burial lots from the corporation to individuals. Section 7 provided for the platting and laying out of the land into burial lots and for the recording of the plats. Section 8 prescribed the mode in which lot owners may alienate

their lots.   Section 9 required the association to prepare the land for interment by laying it out into lots, alleys, avenues and carriage ways.   Section 10 was as follows:

"Out of the proceeds of the sales of lots the corporation may first pay the purchase money of the land purchased for cemetery purposes, and the expenses of grading, laying out and fencing the same, and all necessary incidental expenses, with interest; and after the payment of such purchase money, expenses and interest, the corporation shall provide, by its by-laws, for appropriations out of the proceeds of sales of lots to keep the grounds in repair and in good order:   *Provided, however,* that nothing herein contained shall make it requisite for the corporation to pay the whole of such purchase money, expenses and interest before extending the laying out, grading and platting other parts or portions of said land, from time to time, as said corporation shall deem it necessary and proper."

Section 11 gave to lot owners a right of way, at all times, over the roads, alleys, avenues and carriage ways provided by the corporation.   Section 12 provided that no road or highway should be ever laid out or located over the lands of the association.   By section 13 the membership of the corporation was limited to not less than five nor more than fifteen persons, and the corporation was given power to determine the manner in which persons might become members, and to regulate the mode of transferring and conveying the shares and interest of its members.   Section 14 was as follows :

"In case of the decease of any member of the corporation intestate, or, if testate, failing to dispose of his or her share or interest in the said land, so that the same shall descend to several of his heirs or personal representatives, the persons so taking such shares or interest shall be tenants in common of such share or interest, and may depute and authorize one of their number to act in their behalf in the meetings and affairs of the corpora-

tion, and the persons so deputed shall have all the powers
of any other member.  The proper courts having jurisdic-
tion to order or decree sales of estates of decedents may,
on the petition of one of the persons who take the share
or interest of a deceased member, order the sale of the
whole of the share or interest of the decedent, in the
same manner that the estates of deceased persons are
sold for the payment of debts; and the said courts shall
inquire into and determine what part, if any, of the pro-
ceeds of such sales shall be paid to such corporation on
account of the claim, legal or equitable, of the corpora-
tion against such share or interest, to pay any debts or to
contribute to the funds of the corporation.  The residue,
after paying the costs and expenses of the proceedings
and of the sale, shall be paid over to the persons enti-
tled thereto as such heirs or personal representatives,
but in no case shall there be a partition among such heirs
and tenants in common of any share or interest, but the
same shall remain an entirety for all purposes of the busi-
ness of the corporation:  *Provided, however*, that if several
persons become the joint owners of any share or interest,
by descent or otherwise, each joint owner may convey his
interest therein to any one of the co-tenants."

Section 15 provided as follows:  "It is hereby declared
that the title to said land, when the terms and provisions
of this act shall be complied with, shall be vested in the
corporation as a trustee, and the corporation shall hold
the same in trust for the purpose of interment and a re-
pository for the dead forever; and the said corporation
and the members thereof are hereby forever prohibited
from selling, conveying or in any way alienating or ap-
propriating any part of the land so laid out and platted,
as herein provided, for any other use or purpose whatso-
ever than is contemplated by this act."

Section 16 made it lawful for the corporation to take
and hold any grant or bequest of money or property in
trust, to apply the same, or the income thereof, under the

direction of the board of directors, for the improvement of the cemetery or any portion thereof, or in the erection and preservation of any tomb or monument, according to the terms of such grant or bequest, and gives any court having equity jurisdiction in the county of Peoria, power to compel the performance of any such trust. Section 17 made the willful opening of any tomb for the purpose of robbing it of any clothes or materials placed therein, a felony, and provided for its punishment, and section 18 declared the act to be a public law. Private Laws of 1855, p. 460.

From this resume of the act it will be observed that while the title of the land purchased by the association for cemetery purposes, after the terms and provisions of the act have been complied with, is declared to be in the corporation as a trustee, and the corporation is required to hold the same in trust for the purpose of interment and a repository for the dead forever, a totally different provision is found in relation to the disposition to be made of the revenues arising from the sale of burial lots. From the moneys thus realized the corporation is required to pay, first, the purchase price of the land and the cost and expenses of the improvement thereof, with interest; and second, it is required to appropriate, out of the proceeds of sales of lots, a sufficient sum to keep the grounds in repair and good order. It may be that this latter provision should be so construed as to require the setting apart of such portion of the proceeds of the sale of lots that, when all of the lots are sold and disposed of and that source of revenue no longer available, a fund will be accumulated sufficient to provide for keeping the grounds in good order and repair,—not merely for the time being, but for all time. But it is clear, from all the provisions of the act, that after the portion of the proceeds of the sales of lots necessary for the purposes aforesaid is paid out or appropriated, the surplus belongs to the members, as representing their share or interest

in the corporation.   No other appropriation of such surplus is made by the charter, and that it may lawfully be paid over to the members sufficiently appears from the provisions of section 14.   That section directs that in case of the sale of the share of a deceased member under order of court, the proceeds, after reserving sufficient to satisfy the claim, legal and equitable, of the corporation against the share, to pay any debts or to contribute to the funds of the corporation, shall be paid over to the heirs or personal representatives of the deceased member.

On recurring to the bill, it will be noticed that no charges are made of a failure to appropriate a sufficient sum of money to keep the grounds in good order and repair up to the present time, or that there has been any failure to keep them in good order and repair.   True, it is charged that certain lots which have been sold and conveyed to individual lot owners, and in some of which the dead have been buried, have been allowed to grow up to weeds and other vegetation, so as to have become unsightly; but we are inclined to the opinion that, upon a fair construction of the act, the association is not charged with the duty of caring for and keeping in repair the lots which have been sold, and which have become the property in fee of the lot owners.   It is for them to control their own lots, and to improve, beautify and ornament them as they may see fit.   They may erect upon them monuments or not, as they choose, and if they allow the lots to become unsightly from the growth of weeds and other vegetation, their doing so would seem to be a matter for which they alone are responsible.   By the provisions of section 16 of the act, any lot owner may provide for the perpetual care of his lot by granting or bequeathing a sufficient sum of money or other property to the association in trust for that purpose, and provision is made for compelling the performance of such trust.   But in the absence of such trust fund there is no provision in the charter, so far as we can see, which

makes it the duty of the corporation to keep in repair and good order lots which it has sold and conveyed to private lot owners.

Nor are we able to find in the bill any sufficient allegation that the association has failed to appropriate the portion of its revenues required by its charter to constitute a fund for keeping the cemetery grounds in repair and good order in the future. The allegation is, that the directors of the association intend to set aside a part, only, of the income of the cemetery for the care of the grounds other than the lots sold, but there is no allegation that the part of the income thus proposed to be set aside is not adequate, the insistence being that all the income of the association is a trust fund and should be set apart, and that the distribution of any part of it to the members of the association is a diversion and misapplication of a fund which should be held in trust. It thus appears that the bill contains no sufficient averments of any unlawful appropriation by the directors of any of the revenues or funds of the association.

In view of the interpretation we are disposed to place upon the charter of the association, it seems plain that the bill makes no case entitling the complainants to relief in any of the forms prayed for. Neither they nor the other lot owners occupy the position, either at law or in equity, of members of the association, so as to be entitled to elect directors, or to take upon themselves, in any form, the management of its affairs. By the charter the directors are to be elected by the members of the association, and, as we have seen, the number of members after the organization of the corporation is limited to not less than five nor more than fifteen persons,—a limitation which necessarily excludes the possibility of reckoning the lot owners, which the bill alleges number more than two thousand, among the members. Furthermore, the corporation is given power, after its organization, to determine the manner in which persons may become

members, and regulate the mode of transferring and conveying the shares or interests of its members, and there is no averment that the corporation, even if it had power to do so, had ever made any regulation by which lot owners were to be given the position and rights of members. Nor does the bill make any case for the removal of the corporation and its officers from the trust and the appointment of another trustee in their stead, or even for the interposition of a court of equity to supervise and control the execution of the trust by the corporation itself. The bill fails to show that the association, or its directors and officers, so far as they are shown to occupy a trust relation at all, have been guilty of abusing or mal-administering their trust. It follows that no title to equitable relief is shown.

There being no error in the decree of the circuit court sustaining the demurrer and dismissing the bill for want of equity, the judgment of the Appellate Court affirming the decree will be affirmed.     *Judgment affirmed.*