## APPEAL OF THE SPRINGDALE CEMETERY ASSOCIATION.

Docket No. 4169.   Submitted October 31, 1925.   Decided December 21, 1925.

1. The directors of the taxpayer by informal action set up as a reserve fund, for the perpetual care of cemetery lots, a percentage of the price received for lots sold. There was a contract obligation with the purchasers to keep the lots in repair, but no trust was created in favor of the lot owners. *Held*, that the sum appropriated for the reserve fund may not be subtracted from the sale price in ascertaining the gain realized on the sale.

2. In considering the price received for lots sold around March 1, 1913, as evidence of the value of the remaining lots on that date, such price may not be reduced by a percentage thereof which is placed in a perpetual care reserve fund.

*J. E. Houston, Esq.*, for the taxpayer.
*A. H. Fast, Esq.*, for the Commissioner.

Before STERNHAGEN, LANSDON, and ARUNDELL.

This appeal is from the determination of a net deficiency of $363.04 in income tax for the years 1918, 1919, 1920, and 1921. The errors assigned are the improper determination of value on March 1, 1913, as the basis for gain or loss on sales in the taxable years of cemetery lots, and the inclusion in taxable income of an amount alleged to be a perpetual care fund. The findings of fact are based in part on oral testimony and in part on such portions of a revenue agent's report as were stipulated in evidence.

### FINDINGS OF FACT.

The taxpayer was incorporated February 14, 1855, by a special act of Illinois. The charter contains, among other provisions, the following:

Out of the proceeds of the sales of lots the Corporation may first pay the purchase money of the land purchased for Cemetery purposes and the expenses of grading, laying out and fencing the same and all necessary incidental expenses. with interest; and after the payment of such purchase money, expenses and interest the Corporation shall provide, by its By-Laws, for appropriations. out of the proceeds of sales of lots to keep the grounds in repair and in good order; Provided, however, that nothing herein contained shall make it requisite for the Corporation to pay the whole of such purchase money, expenses and interest before extending the laying out, grading and platting other parts or portions of said land from time to time as said Corporation shall deem it necessary and proper.

It shall be lawful for said Corporation to take and hold any grant or bequest of money or property in Trust, and to apply the same or the income thereof, under the direction of the Board of Directors, for the improvement of said Cemetery or any portion thereof or in the erection and preservation of any tomb or monument, according to the terms of any such grant or bequest; and any Court having equity jurisdiction for the County of Peoria shall have power to compel the performance of such Trust.

On March 1, 1913, the taxpayer owned certain cemetery grounds and lots, which are set forth to the satisfaction of the parties in a certain " Exhibit H " attached to the revenue agent's report of September 3, 1924. The said exhibit correctly shows the value per square foot of such properties on March 1, 1913, in a column headed " Cost sq. ft." This figure varies as to different lots, the maximum being $1.50. The March 1, 1913, value used by the Commissioner is shown on said exhibit in column headed " Net cost sq. ft.," which figure is uniformly 25 cents less than the figure of " Cost sq. ft." This figure of 25 cents per square foot is an amount arbitrarily set up on the taxpayer's books as the portion of the price in each sale set aside as a so-called perpetual care reserve.

The corporation's by-laws contained no provisions for appropriating any part of receipts from the sale of lots as such perpetual care fund, and no resolution to that effect was passed by the directors. The directors by informal decision set up such a reserve on the books. The amount of 25 cents a square foot was an estimate of the amount required to provide a sufficient fund for future care.

Section 51, chapter 21, Revised Statutes of Illinois, provides:

Trust Fund. The Board of Directors of such cemetery society, or cemetery association, or the trustees of any public graveyard, may set apart such portion as they see fit of the moneys received from the sale of lots in such cemetery or graveyard, which sums shall be kept separate from all other assets as an especial trust fund, and they shall keep the same invested in safe interest or income paying securities, for the purpose of keeping said cemetery or graveyard, and the lots therein, permanently in good order and repair, and the interest or income derived from such trust fund shall be applied only to that purpose, and shall not be diverted from such use.

The uniform certificate of purchase covering each lot sold contains the following:

The Association will clean and keep in proper order, the surface of, and the walks belonging to, the above lot, without further charge, during the existence of said Cemetery.

During the taxable years the taxpayer sold certain of its lots, and the portion of the amount received which should be included in taxable income is the subject of this controversy.

### DECISION.

The deficiency should be computed in accordance with the following opinion and will be settled on 15 days' notice, under Rule 50.

### OPINION.

STERNHAGEN: The situation here is different from that considered in the *Appeal of The Los Angeles Cemetery Association*, 2 B. T. A. 495, for there the fund for perpetual care was mandatory and was clearly a trust fund. Here it is permissive under the State law. *Bourland* v. *Springdale Cemetery Association*, 158 Ill. 458; 42 N. E. 86. The taxpayer voluntarily set up a reserve based on an estimate, but there is lacking the clear evidence necessary to establish a trust. So far as the record shows, the directors might at any time reduce the fund or perhaps wipe it out, without restraint, their liability, if any, being one for breach of covenant or contract. Hence we hold that the whole amount received on the sale of lands in the taxable years was gross income to the extent of the excess over March 1, 1913, value or original cost, whichever was higher.

Since the 25 cents per square foot which was reserved for perpetual care was part of the sale price in the taxable years, it was no less so as to sales made around 1913 which were used as measures of value of the remaining lands. It was therefore improper to reduce 1913 value by 25 cents a square foot, and we hold that the figures shown in the column headed " Cost sq. ft." should be used to determine March 1, 1913, value.