MIRIAM T. CRAGG, Appellant, *vs.* SALMON O. LEVINSON, Appellee.

*Opinion filed December 15, 1908—Rehearing denied Feb. 17, 1909.*

1. INJUNCTION—*when repetition of trespasses may be enjoined.* A court of equity may enjoin a repetition of trespasses by the defendant, even though the suit is between two persons only, where the complainant's title is admitted or has been established in an action at law, and where the trespasses are such that the amount recoverable as damages in actions at law would be so small as to be disproportionate to the vexation and expense of such actions, thus rendering the remedy at law inadequate.

2. SAME—*if complainant's title is admitted it is not necessary that it be established at law.* Where the title of the complainant in a bill to enjoin the repetition of trespasses on her land is admitted by demurrer there is no necessity for resort to an action at law to establish her title, and a court of equity will not require resort to such action.

3. SAME—*what facts present a proper case for enjoining trespasses.* A court of equity may interfere by injunction where the bill alleges and the demurrer admits that the complainant is the owner and in possession of the premises, and that the defendant, without any right or claim of right, has repeatedly entered upon the premises and committed trespasses, and that he intends to continue to do so, and to use such premises as his own and prevent the lawful use and possession thereof by the complainant in the manner she desires and has a right to enjoy.

CARTWRIGHT, C.J., and SCOTT and HAND, JJ., dissenting.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

The bill in this case alleges that the complainant is the owner of and with her family resides upon the premises described, known as 4053 Lake avenue, city of Chicago; that her husband acquired title thereto by purchase from the Hartford Insurance Company June 21, 1906, and that on

the 25th day of June, 1906, complainant became the owner in fee of said premises by conveyance from Ralph E. Atherton, to whom her husband had conveyed said premises on the day previous; that the defendant, Salmon O. Levinson, owns the premises known as 4049 Lake avenue, adjoining appellant's premises on the north. The bill further alleges that on the day complainant's husband acquired title to the premises from the Hartford Insurance Company, June 21, 1906, said company erected upon said premises, very close to the north boundary line, a fence; that on the next day agents of defendant trespassed upon complainant's premises and with force and great noise and disturbance tore down and destroyed said fence, thereby causing complainant, who was upon said premises at the time, great alarm and disquiet; that the day before tearing down said fence one Benjamin V. Becker, acting for and on behalf of defendant, threatened, in the presence of several witnesses, to tear said fence down and to tear down any fence that might be re-built in its place as fast as it could be put up, unless an irregular portion of complainant's premises be sold to defendant for $250, and that it was in pursuance of said threat that the fence was torn down on the following day; that afterwards, on or about September 7, 1906, a gang of persons unknown to complainant, acting at the request and procurement of defendant, again trespassed upon complainant's premises; that complainant's father, acting on her behalf, requested said parties to desist and informed them that the complainant was very ill upon her premises; that she had only three days previous given birth to a child; that the nurse attending complainant also requested said parties to refrain from acts of violence and informed them of complainant's condition, but that said parties persisted in their acts of trespasses and violence, threatening and treating the complainant's mother and sister, who at the instance of the complainant were trying to induce said parties to desist from their unlawful acts, with personal violence. The bill fur-

ther alleges that holes had been left when the fence was destroyed by defendant, and that on the 14th day of September, 1906, agents of defendant again trespassed on the premises for the purpose of filling up said holes, and when complainant's mother, acting for complainant, attempted to protect her premises, she was treated with violence and water thrown on her by agents of the defendant. The bill further alleges that the said defendant had often trespassed upon complainant's premises before and since committing the acts above specifically mentioned, by driving an automobile upon, over and across complainant's premises near the north line where they adjoined the premises of defendant; that he still continues to trespass upon complainant's premises and threatens to continue to drive an automobile over and across complainant's said premises indefinitely, and to tear down any and every fence that may be built upon or near her north boundary line; that complainant desired to maintain a fence on the line of her premises in order that she may use and enjoy the same free from the encroachments and trespasses of defendant, but that by persisting in said acts of trespass defendant will defeat her in said desire, and that said acts tend to obliterate the boundaries of her premises and diminish the rental and market value of the same, and that a continuation of said acts will have a tendency to, and will, give defendant a prescriptive right or easement in the said premises unless she resorts to many suits at law, which would be a great annoyance and expense. The bill alleges that complainant desires to use the part of her premises so trespassed upon by defendant for a walk and for the purpose of growing grass, shrubbery, etc., for their adornment, but is prevented from so doing by the acts and threatened continuance of them by the defendant; that she has on account of said acts sustained irreparable injury, and unless defendant is enjoined will be obliged to prosecute a multiplicity of suits against the defendant and every agent procured by him to trespass upon

complainant's premises; that it is the belief of complainant, and she so alleges, that defendant intends to continue his unlawful trespasses for the accomplishment of his purposes without regard to the rights, safety and peace of the complainant and the public. The bill alleges that complainant's remedies at law are inadequate to secure her the quiet, peaceable use and enjoyment of her premises, and she prays that defendant be enjoined from in any manner trespassing upon her premises by driving an automobile thereon, or any other vehicle, and from in any other manner trespassing upon said premises and preventing the complainant from building fences upon her line or destroying any fences when so built.

Defendant demurred to the bill, the grounds of the demurrer being, in substance, that it did not state a case authorizing a court of equity to take jurisdiction of it. The demurrer was sustained and the bill dismissed for want of equity. Complainant appealed to the Appellate Court for the First District, and that court affirmed the decree of the circuit court, and complainant has prosecuted a further appeal to this court.

WEST, ECKHART & TAYLOR, for appellant.

ROSENTHAL & HAMILL, (CHARLES GOODMAN, of counsel,) for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

It is not contended by appellant that the allegations of the bill were sufficient to make a case of irreparable injury as defined in the law, but it is contended that the bill was sufficient, upon its face, to authorize a court of equity to take jurisdiction of the case by way of injunction for the prevention of a multiplicity of suits. The bill charges that appellee had committed repeated acts of trespass against appellant's property and declared his intention to continue

repetitions of similar acts, on account of which appellant would be required to bring numerous actions at law, causing great expense and vexation. Appellee contends that to warrant the injunction to prevent a multiplicity of suits there must be different persons assailing the same right; that where the suit is between two persons, only, and the same trespass is repeated by the same person, the injury being susceptible of compensation in damages, equity will not interfere. A number of cases decided by this court are cited in support of that proposition, and three are especially relied upon as being conclusive. They are *Commissioners of Highways* v. *Green,* 156 Ill. 504, *Harms* v. *Jacobs,* 158 id. 505, and *Chicago Public Stock Exchange* v. *McClaughry,* 148 id. 372. We think there is a plain distinction between those cases and the case at bar. While the general rule is as stated by counsel for appellee and was so held in the cases above referred to, there is an exception to the rule which was recognized in those cases, and that is, where the rights of the complainant have been established by an action at law, then equity may interfere to prevent a repetition of trespasses although committed or threatened by only one person, even though the threatened injury may not be irreparable. The case of *Jerome* v. *Ross,* 7 Johns. Ch. 315, (opinion by Chancellor Kent,) states the rule as contended for by appellee and does not appear to recognize any exception to it. The following language is taken from the opinion in that case: "A court of equity will sometimes interfere to prevent a multiplicity of suits by a bill of peace. The principle is stated in *Tenham* v. *Herbert,* 2 Atk. 483, and in *Eldridge* v. *Hill,* 2 Johns. Ch. 281. But that is only in cases where the right is controverted by numerous persons, each standing on his own pretensions, and it has no application to the case of one or more persons choosing to persevere in acts of trespass in despite of suits and recoveries against them. A troublesome man may vex and harass his neighbor by throwing down his fences and turning cat-

tle upon his grounds, or by passing over them and otherwise annoying him; but it is to be presumed that repeated recoveries for damages, with the punishment of costs and such smart money as a jury would naturally give, would soon effectually correct any such disposition." That case has been followed by the courts in a number of States without apparently recognizing any exception to the rule there laid down. But other courts of equal respectability and number, while following the rule announced by Chancellor Kent in cases not involving the exception, have not followed it where the exception was involved. Necessarily, decisions of Chancellor Kent must have great weight with courts, but an examination of the opinion in *Jerome* v. *Ross* we think makes it apparent that the chancellor was stating the rule as applicable to the facts in the case under consideration. In that case the complainant sought to enjoin the agents of the canal commissioners from taking from premises he claimed to own, rock for the purpose of constructing a dam for the use and benefit of the canal. The defendants answered, claiming they had authority to take the rock, setting up in their answer particularly the grounds of their authority. The court held they did have such authority The bill alleged that several actions had been commenced in a court of record to recover damages for the trespasses but none of them had been brought to trial; that one action had been instituted before a justice of the peace in which plaintiff recovered a judgment of $25 damages. The answer admitted the recovery before the justice of the peace but alleged the judgment was erroneous and that defendants had brought *certiorari* for the purpose of having the judgment reversed. The right of the complainant, therefore, being in dispute and the threatened injury not being irreparable but capable of compensation in damages, it was not a case justifying the writ of injunction under the rule that equity will not take jurisdiction to try and determine mere legal titles, even though the claimed right of defend-

ant had not been sustained. Mr. Pomeroy says in a note to section 1357 of his work on Equity Jurisprudence that the rule announced in *Jerome* v. *Ross* "is opposed to the modern decisions of the highest ability and authority."

Recurring to the above mentioned cases decided by this court, in *Commissioners of Highways* v. *Green, supra,* which was a bill for an injunction to restrain trespasses, complainant alleged he was the owner of certain land upon which he had erected a fence and that defendants destroyed the fence, and when he attempted to re-build it again destroyed it and threatened that they would tear down any fence he would erect thereafter, and that a multiplicity of suits would result unless defendants were restrained. The answer denied that defendants had entered upon complainant's land and alleged that the premises in dispute were a public highway; that complainant had erected his fence in the highway, and that defendants, in the discharge of their official duties, had caused it to be removed. The court, after discussing the subject of the jurisdiction of a court of equity to enjoin a trespass and the grounds authorizing the exercise of the jurisdiction, said (p. 509): "To entitle a party to maintain a bill of peace or bill to prevent a multiplicity of suits at law there must be a right claimed affecting many persons. If the right is disputed between two persons, only, not for themselves and all others in interest but for themselves alone, the bill will not lie unless the complainant's right has been established at law." The bill prayed an injunction solely for the prevention of a multiplicity of suits. Upon a hearing in the circuit court a decree was entered awarding an injunction. That decree was reversed by this court upon the ground that the case was not one justifying the issuing of the writ.

In *Harms* v. *Jacobs, supra,* the bill was for an injunction to restrain defendant from committing trespasses upon premises claimed to be owned by the complainant. The bill alleged defendant had entered upon his premises, de-

stroyed his fences and committed other unlawful acts set out in the bill, and that he threatens to repeat said trespasses and claims a prescriptive title to the land and threatens to take possession of the same; that he is litigious and quarrelsome and pays no attention to fines, peace bonds and judgments in trespass; that to obtain a final judgment in an action at law against him would take a long time, owing to the congested calendar of the court, and to resort to such remedies would be a practical denial of justice. The answer denied the allegations of the bill; alleged defendant was the owner of the property in question, and denied the jurisdiction of the court to entertain the bill on the ground that complainant had an adequate remedy at law. The bill also alleged that defendant was insolvent. Upon a hearing the circuit court found complainant to be the owner of the premises; that he had no adequate remedy at law, and perpetually enjoined defendant from interfering with complainant's possession of said premises and from clouding his title thereto and from setting up and asserting a prescriptive title in himself. This court said the allegation in the bill as to the insolvency of the defendant was the only averment that would give the court jurisdiction because of irreparable injury, but that the proof showed defendant was worth over $400,000, and there was no finding in the decree on this subject. This court therefore held that under the evidence it was apparent complainant had a complete remedy at law and would sustain no damage that could not be satisfied by a judgment in a court of law, and said (p. 513): "There is no averment in the bill which necessitates a discussion of the question of a resort to a court of chancery, by injunction, to prevent a multiplicity of suits."

In *Chicago Public Stock Exchange* v. *McClaughry, supra,* the bill alleged complainant was lawfully incorporated for the purpose of collecting and publishing market quotations and furnishing facilities for trade in bonds, stocks,

securities, grain, pork, farm and dairy products of all kinds, and to buy and sell grain, pork, farm and dairy products of all kinds on commission; that it leased a large hall, fitted it up for its business, sub-let to various persons, firms and corporations desk room in said hall, and that it was engaged in and carrying on a legal business in buying and selling stocks, bonds, grain, pork and produce. Defendant was chief of police of the city of Chicago, and the bill alleged that, acting through his subordinates, he took forcible possession of complainant's hall, separated the wires connected with its telegraph instrument, cut the wire running to the electric lamps, and took possession of and carried away the private letters, statements, accounts and other property of complainant; that defendant had notified complainant he would repeat said acts as long as it attempted to do business in said hall; that by reason thereof complainant is prevented from renting portions of its said hall which it would otherwise be able to do, and is harassed and annoyed in its business to its great and irreparable damage, which cannot be exactly measured or ascertained. The answer denied that the complainant leased said hall for or was engaged in a lawful or legitimate business, but averred that it was organized for and was carrying on gaming and running a gaming house. This court held that for the trespass committed and threatened, complainant had an adequate remedy at law; that the injury complained of was the loss of the fair rental value of the premises, which was susceptible of compensation in damages, and that the bill did not, therefore, make a case of irreparable injury. Upon the subject of the jurisdiction of courts of equity to interpose upon the ground of a multiplicity of suits the court said (p. 381): "To warrant interference upon the ground of a multiplicity of suits there must be different persons assailing the same right, and not a mere repetition of the same trespass by the same person, 'the case being susceptible of compensation in damages.' (1 High on Injunctions,

sec. 700.) 'If the right is disputed between two persons, only, not for themselves and all others in interest but for themselves alone, the bill will be dismissed.' (2 Story's Eq. Jur. sec. 857.) If the right claimed affects numerous . parties equity will sometimes enjoin a continuance of the litigation, because the judgment against one of the parties would not be binding on the others; but where there are continued suits between two single individuals, arising from the separate repetition of trespasses, equity will not interfere by injunction where the right has not been established at law, because a judgment in any one of the suits would be evidence in all the others. If the right has not been established at law the necessity of intervention does not exist. (*Moses* v. *Mayor of Mobile,* 52 Ala. 198; *Poyer* v. *Village of DesPlaines,* 123 Ill. 111; *Pratt* v. *Kendig,* 128 id. 293.) It is manifest from the allegations of the bill in the present case that the complainant is seeking to enjoin the repetition of trespasses by the same defendant, furnishing grounds for separate suits, so that there is not shown the multiplicity of suits which induces equity to interfere."

' It will be seen that in all three cases the right of the complainant was disputed by the defendant, and there was no averment that it had ever been established in any action at law. Both the *Green* and the *McClaughry cases* referred to the exception to the rule, that to warrant interference of equity by injunction there must be different persons assailing the same right and not a mere repetition of the same trespass by the same person, and recognized that where the right has been established at law, equity may interfere by injunction. In *Poyer* v. *Village of DesPlaines,* *supra,* the general rule was stated without the exception. That case was a suit to enjoin the village from prosecuting the complainant under a certain ordinance which the complainant alleged was invalid but the defendant insisted was valid. In discussing the subject of enjoining a multiplicity of suits the court quoted from *Eldridge* v. *Hill,* 2 Johns.

Ch. 281, which was a suit to enjoin a series of prosecutions for the erection and maintenance of a nuisance, the following: "No case goes so far as to stop these continued suits between two single individuals so long as the alleged cause of action is continued and there has been no final or satisfactory trial or decision at law on the merits." In the *Poyer case* there had been but one trial in the case brought against the complainant, and that was before a justice of the peace. In that case the ordinance was held valid, and a fine assessed against him of $50, from which judgment he prosecuted an appeal to the criminal court of Cook county, which was still pending when he filed his bill for injunction. In *Lloyd* v. *Catlin Coal Co.* 210 Ill. 460, this court quoted the rule announced in *Jerome* v. *Ross, supra,* but said (p. 463): "The cases where equity will enjoin to prevent a multiplicity of suits between two persons, only, are where the whole controversy arises out of the same matter and has been settled at law, and further litigation, which seems purely vexatious, is persisted in. (*Imperial Fire Ins. Co.* v. *Gunning,* 81 Ill. 236; *Pratt* v. *Kendig,* 128 id. 293.) The latter case cited is relied upon by appellant but does not support his contention. It is authority for the proposition that a party who has established his rights at law may by injunction restrain further and vexatious litigation in relation to the same matter by an original party or those claiming in privity with him."

We deem it unnecessary to refer to other cases decided by this court where the rule has been stated as in the cases cited. In no case in this State which we have examined or to which we have been referred has it been held that under no circumstances is a court of equity authorized to grant relief by injunction where the suit is between two persons only and involves a repetition of the same trespass by the same person, and where the injury is not irreparable but is capable of compensation in damages. Some of the cases, it is true, do not mention any exception to the rule, but the

facts in those cases did not require it. Most of them, however, while stating the rule applicable to the facts in the particular case, recognized the exception where the complainant's right has first been established at law, and that in such cases, although the injury may not be irreparable and the damages may be susceptible of compensation in an action at law, still the repetition of the trespass would be purely vexatious, and in such cases a court of equity may restrain further vexatious litigation in relation to the same matter.

In *Taylor* v. *Pearce*, 179 Ill. 145, complainant sought to enjoin the defendants, commissioners of highways, from trespassing on premises alleged to be owned by her. The opinion states that it is not denied by the answer that the complainant owned the land in controversy, though it appears it was claimed to be a part of the public highway, but complainant had been in possession of the disputed premises for more than twenty years and had it enclosed by a fence. The court held that sufficient facts were alleged in the bill and admitted in the answer to give a court of chancery jurisdiction, on the ground the action was to prevent a multiplicity of suits at law and to restrain a continuing trespass.

*Mussulman* v. *Marquis*, 1 Bush, 463, was a suit to enjoin the defendant from trespassing upon the complainant's property and throwing down and removing fences. The complainant's title was not controverted. The bill alleged that defendant had repeatedly thrown down the fences and had announced his intention to continue to do so, and that he was insolvent. The right to the injunction was sustained. It appeared that the defendant was insolvent, but the decision did not depend, alone, upon that fact. The court said: "Indeed, without regard to the alleged insolvency of the defendant, as the other facts alleged disclose a determined purpose on his part to persist in perpetrating the unlawful acts complained of, thus rendering redress at

law only obtainable by a multiplicity of suits, and probably without any sufficient compensation for the vexation, expense and trouble attending their prosecution, we are of the opinion that the chancellor had power to enjoin the mischief in order to prevent oppressive litigation, the principle of equitable jurisdiction being, that where there is no adequate remedy at law the chancellor must take jurisdiction, or otherwise the damage would be irreparable."

In *Mills* v. *New Orleans Seed Co.* 65 Miss. 391, it was sought to enjoin defendants from taking sacks of complainant which in the course of its business it distributed along the railroads for producers of cotton seed to fill and ship to complainant. The bill alleged that defendants were engaged in the same business and were in the habit of taking complainant's sacks; that complainant had brought numerous actions of replevin, in all of which defendants had given bond and continued to persist in their course of taking the sacks. The bill alleged that the remedy at law was inadequate and prayed an injunction. Defendants demurred to the bill and the demurrer was overruled. The Supreme Court of Mississippi held this action of the trial court was proper, and said: "It is said that the prevention of vexatious litigation and of a multiplicity of suits constitutes a favorite ground for the exercise of the jurisdiction of equity, and it may be laid down as a general rule that whereever the rights of a party aggrieved cannot be protected or enforced in the ordinary course of proceedings at law except by numerous and expensive suits, equity may properly interpose and afford relief by injunctions. (1 High on Injunctions, sec. 12; 1 Pomeroy's Eq. Jur. sec. 245.) Where trespass to property is a single act and is temporary in its nature and effects, so that the legal remedy of an action at law for damages is adequate, equity will not interfere; but if the trespass is continuous in its nature and repeated acts of trespass are done or threatened, although each of such acts, taken by itself, may not be destructive or

inflict irreparable injury, and the legal remedy may there-
fore be adequate for each single act if it stood alone, the
entire wrong may be prevented or stopped by injunction.
(1 Pomeroy's Eq. Jur. sec. 245; 3 id. sec. 1357.) The
separate remedy at law for each of such trespasses would
not be adequate to relieve the injured party from the ex-
pense, vexation and oppression of numerous suits against
the same wrongdoer in regard to the same subject matter.
The ends of justice require, in such case, that the whole
wrong shall be arrested and concluded by a single proceed-
ing. And such relief equity affords, and thereby fulfills its
appropriate mission of supplying the deficiencies of legal
remedies."

*Boston and Maine Railroad Co.* v. *Sullivan,* 177 Mass.
230, was a bill to enjoin the defendants from going upon
the station premises of the complainant. The bill was de-
murred to and the demurrer sustained. The Supreme Court
of Massachusetts reversed the judgment of the trial court
and ordered an injunction to issue. The demurrer admit-
ted the complainant's title and the trespasses of the defend-
ants. The court said: "It seems to us clear that the bill
in this case may be maintained. If the plaintiff were to sue
at law, the amount recoverable could not be large in com-
parison with the amount expended in litigation, and every
trespass would give a new right of action, hence there
would arise a great multiplicity of suits. At some time the
plaintiff would be entitled to the protection of a court of
equity, and there is no reason why, on the facts of this case,
the remedy by injunction should not be granted at once.
This court has now full jurisdiction in equity and can put
in force the remedies appropriate to that jurisdiction. The
language of Sir W. M. James, L. J., in the case of *Goodson*
v. *Richardson,* L. R. 9 Ch. App. 221, 226, is very appropri-
ate to this case: 'The defendant in this case is admittedly a
trespasser. He has committed a trespass upon the plaintiff's
land without any legal justification or any legal excuse what-

ever, and he proposes to continue that trespass from day to day  *  *  *  for the purpose of making a profit of a trade which he proposes to set up in rivalry to a trade which the owner of the land upon which he is so committing the trespass is interested in.  It is said that we ought to allow this to be done; that we ought, in fact, to dismiss the plaintiff from this court and tell him to find his way to another court, in which he is to bring an action for the wrong for which there is no defense whatever.  He is to bring that action at his own cost, and having succeeded in one action he is to bring a second,—I do not know whether more than one will be required,—and then, having succeeded in one action or two actions, or perhaps three actions, all of which, on the facts proved in this case, would necessarily result in verdicts for him, he is to come back to this court and obtain a perpetual injunction on the ground of repeated vexation and repeated actions.  I do not think that there is any principle in this court which will compel us to drive the plaintiff to go through all that litigation before he is entitled to that relief which he would ultimately get when he had gone through it."

In *Mendelson* v. *McCabe,* 144 Cal. 230, the suit involved the right to an injunction to restrain a party having a right of way across another's land subject to the right of the owner to maintain gates at the points of ingress and egress, which it was necessary to open and close in using the right of way.  The party entitled to use the right of way habitually left the gates open and declared his intention to continue to do so.  The court held the owner of the land entitled to an injunction, one of the grounds being, that in actions for trespass for each act of leaving the gates open the damages recoverable would be very small,—probably insufficient to defray the expense of maintaining the action, —and therefore the remedy at law would be inadequate and would require numerous petty suits, which it is not the policy of the law to encourage.

In *Lembeck* v. *Nye,* 47 Ohio St. 336, it was held the right to an injunction to restrain the commission of trespasses exists, regardless of the solvency of the defendants, where the damages recoverable for each separate act or repeated trespass would not equal the expense necessary to prosecute such actions.

In section 702a of High on Injunctions it is said: "As further illustrating the doctrine under discussion, it is held that where the acts of trespass are constantly recurring but the injury resulting from each separate act is trifling, so that the damages recoverable for each act would be very small when compared with the expense necessary to prosecute separate actions at law therefor, relief will be granted owing to the inadequacy of the legal remedy."

In the chapter on Injunctions in 22 Cyc. 768 it is said: "It is now well settled that where an injury committed by one against another is continuous or is being constantly repeated, so that the complainant's remedy at law requires the bringing of successive actions, that remedy is inadequate and the injury will be prevented by injunction. If repeated trespasses are threatened for which a remedy at law could be obtained only through a multiplicity of suits, making the expense excessive and disproportionate to the damages, an injunction will commonly be issued. Especially is this true when the acts complained of constitute a willful invasion of the complainant's right. On the other hand, it has been held that an injunction will not be granted to relieve one person from the necessity of suing another for a succession of wrongful acts where the remedy at law is adequate; and it may be a prerequisite that the complainant first establish his right at law." See, also, *McClellan* v. *Taylor,* 32 S. E. Rep. (S. C.) 527; *Lynch* v. *Egan,* 93 N. W. Rep. (Neb.) 775; *Bohlman* v. *Evangelical Lutheran Church,* 60 Neb. 364.

Without further multiplying decisions, (and many others are to be found,) the jurisdiction of equity to interfere by injunction where the suit is between two persons only,

to restrain the repetition of trespasses by the same person where the complainant's title is admitted or has been established in an action at law, seems well established by authority. The mere fact, however, that a complainant's right has been established at law is not always sufficient to justify the exercise of this jurisdiction. The authorities hold that the circumstances and character of the threatened injury must be considered, and in a proper case, where the right of the complainant has been established at law, equity will afford relief by injunction. In such case the fact that the suit is between two persons, only, is not, of itself, sufficient to justify the denial of the writ. To some extent the application for the writ of injunction is addressed to the sound discretion of the chancellor, and while the power to grant it has always been considered an extraordinary one, which should not be abused, it is not controlled by technical legal rules. Some of the rules applicable to the exercise of the power are so well settled as to be as binding on courts as are the rules of law in any case, but in a measure the application for the exercise of the power to grant injunctions is addressed to the conscience and sound discretion of the chancellor. While courts would not be justified in exercising this power contrary to established rules, neither are they obliged to shut their eyes to the demands of justice because under the particular circumstances presented no general rules authorizing the issuing of the writ may be found, where there are none forbidding it. The jurisdiction of courts of equity to issue writs to restrain the commission of trespasses is not confined to cases where the injury is irreparable because the defendant is insolvent or because the injury goes to the destruction of the estate or inheritance. We have seen from the cases above cited that a bill to enjoin repeated trespasses, which would require numerous and successive suits in an action at law if the plaintiff were remitted to that remedy, and where the amount recoverable would be disproportionate to the vexation and expense at-

tending the litigation, may be maintained. In such cases it is said the remedy at law is inadequate. In section 496 of Pomeroy's Equitable Remedies it is said: "The jurisdiction of equity to restrain continuous or repeated trespasses rests on the ground of avoiding a repetition of similar actions. It is a basis of jurisdiction that is frequently found in cases where the injury is also irreparable. Very often, indeed, the injury is irreparable only because it is continuous or repeated when it would not be if temporary, and in such cases the injunction will issue as a matter of course. * * * If the plaintiff's legal remedy may be vexatious, harassing, and hence inadequate, when he recovers substantial damages, still more would it seem to be so when his recovery is only nominal. When the trespasses complained of are caused by the separate acts of individuals a multiplicity of suits may be caused to plaintiff either because the defendants are numerous or because a single defendant does the same or similar acts repeatedly. The principle involved in all such cases is the same and injunctions should issue, and when the basis of the multiplicity of suits which plaintiff fears is that the defendants are numerous all authorities agree in granting the injunctions, but when it is a case of a single defendant who, by repeating his acts of trespass, makes it necessary for plaintiff to pursue his legal remedy only by a succession of actions, the decisions are curiously diverse. It is held in a small group of cases that this is not the kind of multiplicity of suits which equity enjoins, but that, instead, an injunction is proper only when different persons assail plaintiff's right. The other view, and the one sustained alike by the weight of authority and by principle, is, that if a defendant manifests a purpose to persist in perpetrating his unlawful acts, the vexation, expense and trouble of prosecuting the actions at law make the legal remedy inadequate and justify a plaintiff in coming into equity for an injunction." In *Watson* v. *Sutherland,* 5 Wall. 74, it was said: "It is not enough that there is a remedy at law.

It must be plain and adequate, or, in other words, as practical and efficient to the ends of justice and its prompt administration as the remedy in equity." In section 1357 of Pomeroy's Equity Jurisprudence it is said: "If the trespass is continuous in its nature, if repeated acts of wrong are done or threatened, although each of these acts, taken by itself, may not be destructive and the legal remedy may therefore be adequate for each single act if it stood alone, then, also, the entire wrong will be prevented or stopped by injunction on the ground of avoiding a repetition of similar actions. In both cases the ultimate criterion is the inadequacy of the legal remedy."

Our investigations have satisfied us that the weight of the more recent decisions sustains the conclusions we have reached that the bill in this case made a proper case for the exercise of the equitable jurisdiction invoked. There was no allegation that complainant's title had been established in an action at law, but that was unnecessary. By demurring to the bill defendant admitted her title. In such case there is no necessity for a resort to an action at law to establish it and a court of equity will not require resort to such action. (Pomeroy's Eq. Jur. sec. 252.) As the case is presented on this record, defendant admits that complainant owns and is in possession of the premises, and that he, without any right whatever, has repeatedly entered upon them and committed trespasses and intends to continue to do so; in effect, that without any claim of right whatever he has used, and intends to continue to use, appellant's premises as if they were his own, and that he has prevented, and will continue to prevent, her from enjoying the lawful use and possession of her own premises in the manner she desires and has the right to use them. His defense is, conceding all of this to be true, the complainant has a right of action against him at law to recover the damages she has sustained and will yet sustain from repeated trespasses. It

may be admitted that the injuries are such as may be compensated in an action for damages, still the injuries are of such character that, while exceedingly annoying and vexatious, the actual damages recoverable would be so small as to be disproportionate to the expense and vexation attending the litigation. But it is insisted, as was said by Chancellor Kent in *Jerome* v. *Ross,* that smart money may be recoverable in such cases, and this, with the costs, would be sufficient punishment to prevent a repetition of the unlawful acts. In the numerous authorities we have examined no such distinction is made in any other case. The quotation in *Boston and Maine Railroad Co.* v. *Sullivan, supra,* from Sir W. M. James, L. J., is, we think, a sufficient and complete reply to this contention.

As the question is presented in this record, we can see no good reason, in principle or upon authority, for requiring complainant to try the uncertain experiment of actions at law, that threaten to be numerous, for the protection of her admitted rights in the enjoyment of her property before permitting her to claim the protection of a court of equity. Clearly, under the state of this record, to hold that complainant is entitled to the writ of injunction does not deprive defendant of or prejudice him in any right he has, for he does not claim any right.

We are of opinion the circuit court erred in sustaining the demurrer and dismissing the bill, and that the Appellate Court erred in affirming that decree.

The judgment of the Appellate Court and the decree of the circuit court will be reversed and the cause remanded to the circuit court, with directions to overrule the demurrer.

*Reversed and remanded, with directions.*

CARTWRIGHT, C.J., SCOTT and HAND, JJ., dissenting.