## School Directors, Defendants in Error, v. James R. Toll et al., Plaintiffs in Error.

1. SCHOOLS—*what property subject to control of directors.*
*Held*, under the evidence, that the property in question in this case was within the control of the school directors and without their consent it was not lawful for the religious organization to use the same.

2. INJUNCTIONS—*when right to restrain threatened trespasses.*
The jurisdiction of courts of equity to restrain the commission of trespasses is not confined to cases where the injury is irreparable, because the defendant is insolvent, or because the injury goes to the destruction of the estate or inheritance, and a bill to enjoin repeated trespasses which would require numerous and successive suits in an action at law if the complainant were relegated to that remedy, and where the amount recoverable would be disproportionate to the vexation and expense attending the litigation, may be maintained, the remedy at law in such cases being inadequate.

Bill in chancery. Error to the Circuit Court of Calhoun county; the Hon. ALBERT AKERS, Judge, presiding. Heard in this court at the May term, 1908. Affirmed. Opinion filed May 19, 1909.

CHARLES TEMPLE, for plaintiffs in error.

FRANK A. WHITESIDE and T. J. SELBY, for defendants in error.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

This is a bill in chancery filed by defendants in error, the Directors of School District No. 10, Township 8, etc., Calhoun county, Illinois, by which they seek to restrain plaintiffs in error from entering a certain school building, alleged to belong to said School District No. 10, for the purpose of holding religious or other meetings therein without the consent of a majority of the Board of Directors of said district first had, and from doing any damage to said building or the furniture therein or commiting any acts of trespass to the property of said school district.

A temporary injunction was issued in accordance with the prayer of the bill. A demurrer to the bill was overruled and a motion to dissolve the injunction denied. Upon a hearing upon the report of the master in chancery, the chancellor decreed that the temporary injunction be made permanent, whereupon the defendants sued out this writ of error.

The bill avers in substance that said school district was legally organized in accordance with the statute and had been in existence for many years last past, and that the defendants were residents of said district; that the inhabitants of said district, more than forty years prior to the filing of the bill, had by voluntary contributions erected a certain building for public school purposes upon a certain described tract of land of about an acre in extent, within said district; that said building was thereafter under the control and possession of the directors of said school district for many years, during which time it was used for public school purposes and maintained by public taxation, until destroyed by fire; that immediately thereafter the inhabitants of said School District authorized the directors thereof to levy and collect a tax on the property of said School District to build a new school house on said old site; that pursuant to such authority said directors did levy taxes, and out of the proceeds thereof erected a school building upon said old site and took possession and control of, and thereafter used and maintained the same for school purposes until the present time, a period of over thirty years, and that their right so to do had never been questioned; that said directors had permitted the use of said school house for religious meetings to accommodate the defendants and other inhabitants of said district, but that such meetings had resulted in damage to said building and the furniture therein, and that thereupon they, the said directors, had forbidden the further use of the same for religious meetings; that

thereafter at divers times the defendants had wilfully and forcibly broken into said school house, and without the consent of the directors continued to hold meetings therein. The bill further avers that the defendants threatened to continue said trespasses, claiming a joint ownership in said building and the right to use the same for their meetings, and that said directors believed and feared that said defendants would carry such threats into execution unless restrained by order of court; that suits at law or prosecutions against said defendants would prove unavailing to restrain the commission of said trespasses and if instituted would be so numerous as to involve the complainants in a multiplicity of suits and cause excessive expense and strife and contention among a portion of the residents and taxpayers of said district; that said defendants were insolvent, and that irreparable injury would be sustained by the complainants unless the defendants were restrained and enjoined from committing the threatened further trespasses against said property.

The evidence discloses that in the year 1860, one James Poor, the owner of the land upon which the school house mentioned in the bill was located, conveyed the same to Samuel Merida and four others, describing them as "Trustees of Bethel Church," and to their successors in office, the deed of conveyance reciting that the property was to be used for school purposes. Before any use was thereafter made of the land, the Bethel Church organization disbanded and a number of its members, including four of the five grantees named in the deed from Poor, joined another organization known as the Church of Christ. The latter body in the year 1862 erected a building upon the premises in question which was used for both church and school purposes until the year 1874, when the same was destroyed by fire. During the following year the school directors submitted to the voters of the district the question of the erection of a new school house and the selection of a site therefor. An election was held at which it was unanimously determined that

a new building should be erected upon the site of the former one. No claim of right or title to the land was at that time asserted by the members of the Church of Christ or any or either of them. The present building was thereupon erected by the then board of school directors, and the cost thereof, as well as its subsequent maintenance, paid out of money raised by taxation for school purposes. The new building was thereafter used for church and school purposes by the Church of Christ and the directors, jointly, until the year 1892, when the then school directors refused to permit the church organization to further use the building. A suit was then instituted by the trustees of the church to recover possession of the building, but such suit was thereafter dismissed and the building continued to be used and occupied as formerly until September 1904, when the present bill was filed.

The evidence further shows that during the interim plaintiffs in error and others on several occasions forcibly entered the school building and held religious meetings therein, and that they had threatened to continue to do so.

Under the foregoing circumstances it is obvious that the building in controversy is school property within the meaning of the statute which provides that the Board of School Directors "shall have the control and supervision of all school houses in their district and may grant the temporary use of school houses, when not occupied by schools, for religious meetings and Sunday schools, for evening schools and literary societies, and for such other meetings as the directors may deem proper." Rev. Stat. 1909, p. 2013.

It is equally clear that neither plaintiffs in error, the religious organization represented by them, nor others, could have a lawful right to use the school house in question without the permission of defendants in error.

Plaintiffs in error insist that inasmuch as the parties have had joint occupancy of the premises for many years, each recognizing the other as joint owner, one

cannot deprive the other of the right of occupancy without first having the respective rights of the parties determined in a court of law.

The evidence fails to show any vested right of plaintiffs in error or other members of the church organization to occupy or use the new school house. Such rights as they enjoyed were permissive only and revocable at any time at the discretion of the Board of School Directors. There was therefore no disputed right of title or occupancy of the school house for the determination of a court of law.

It is further insisted that before the present bill can be maintained, it must be alleged and proved that irreparable injury would result to the complainants if the relief is not granted; that the injunction is absolutely necessary to avoid a multiplicity of suits; that the defendants are insolvent, and that the complainants have no adequate remedy at law. It is contended that the evidence fails to establish neither of the foregoing essential elements. In the recent case of Cragg v. Levinson, 238 Ill. 69, it is held that the jurisdiction of courts of equity to restrain the commission of trespasses is not confined to cases where the injury is irreparable, because the defendant is insolvent, or because the injury goes to the destruction of the estate or inheritance, and that a bill to enjoin repeated trespasses which would require numerous and successive suits in an action at law if the complainant were relegated to that remedy, and where the amount recoverable would be disproportionate to the vexation and expense attending the litigation, may be maintained, the remedy at law in such cases being inadequate.

It is obvious that if plaintiffs in error were relegated to the action of trespass numerous suits against the various trespassers would probably be necessary for the protection of their rights in the premises, and that the present case falls within the exceptions to the general rule thus declared.

We are of opinion that the chancellor had jurisdiction to grant the relief prayed for and that the same was warranted by the evidence.

The decree will be accordingly affirmed.

*Affirmed.*