## Rosa Factly, Appellee, v. Henry V. Factly, Appellant.

## Gen. No. 10,182.

Opinion filed March 9, 1948. Released for publication March 30, 1948.

THEODORE N. SCHNELL and BEN RIFKEN, both of Elgin, for appellant; THEODORE N. SCHNELL, of Elgin, of counsel.

GEORGE D. CARBARY and PAUL M. HAMILTON, both of Elgin, for appellee.

MR. JUSTICE BRISTOW delivered the opinion of the court.

Henry Factly, Sr. and his wife Rosa on August 22, 1936, made a deed to their son Henry Factly, Jr., of their 94 acre farm and at the same time the son made a contract which provided as follows: "This agree-

ment made this 22nd day of August 1936 A.D. between Henry Factly Sr. and Henry Factly Jr., both of Kane County Illinois. Whereas Henry Factly Sr. has deeded his farm in Hampshire Township Kane County Illinois and Genoa Township Dekalb County Illinois to his son Henry V. Factly Jr. Therefore in consideration of the above, Henry V. Factly Jr. agrees that his father and mother Henry V. Factly Sr. and Rosa Factly shall be permitted to reside on said farm the remainder of their life if they so choose.''

Henry Factly, Sr., died on December 9, 1941, after which time a daughter Louise M. Fillmore and her husband Raymond Fillmore moved in with Mrs. Factly and operated the farm until March 1941. Since October 1942, the son has operated the farm alone, and the mother, daughter and son-in-law have occupied the residence, used the buildings such as the garage and chicken house, and small tracts of land for flower and vegetable gardening. Mrs. Factly was growing old and feeble and requested her daughter to stay with her and take care of her in general. They lived three miles from town. An automobile was maintained by them to take Mrs. Factly to church, to see the doctor and to visit the nearby shopping centers to attend to their needs.

It appears that in April 1945, something went wrong, for Junior Factly got into a very bad frame of mind. He evidently sought to make life so miserable for his aged and failing mother that he wanted her to vacate the premises. This is what he did: he pulled their automobile out of the garage, removed the garage doors, placed a large plow in the garage so that there was no room for the car, obstructed the entrance to the garage with large piles of manure; he put an electric fence across the driveway to the farm so that his unsuspecting mother might receive a sudden shock; he shut off the electric power so that the family was deprived of a water supply, also placed a chain in the

cogs on the windmill thus destroying its usefulness; he drove the chickens out of the chicken house and placed iron pipes in the weeds near the path leading to the chicken house so that his mother would stumble and fall over them; he dug up the flowers and garden, and tore away the fence surrounding the garden; in the summer of 1946, he would plant large piles of cow manure close to the home in various positions so that the winds coming from all directions would keep the mother aware of the odors and flies that naturally attend such a condition; he tied a bull on a chain near the residence and never did any cleaning and then provided for the bull a plaything which caused his mother many sleepless nights. He tied a large milk can to a tree leaving it suspended in the air and placed in it some rocks, so that when the bull would butt the can terrific noises would result.

Mrs. Factly came into a court of equity in Kane county with her complaints in 1946, to see if she could find any relief and prayed for an injunction against her son interfering with her peaceful possession of her home. The son made motions to strike the complaint relying mainly upon the theory that a court of equity has no jurisdiction to entertain such a bill. This was overruled, whereupon he filed an answer admitting all the charges that he had been a pretty inconsiderate person but saying that on various technical grounds his mother is not entitled to the relief sought by her in this proceeding.

Needless to say the court below entered an injunction both mandatory and prohibitory in its effect and from this decree Henry appeals. The appellant did not see fit to have prepared a report of proceedings. It is argued by appellant that the mother had an adequate remedy at law. Much space is also devoted to the argument that the plaintiff not having had her rights to occupancy of the property in question first adjudicated in a court of law, that a court of chancery

will not take jurisdiction. The line of cases cited and relied upon by appellant have no application to the situation under consideration. Typical of those cases is *McRaven v. Culley*, 324 Ill. 451, which involved a bill for injunction seeking to restrain the defendant from entering upon complainants land and tearing down a fence to open a public highway over said land. The court said:

"This bill is not one of which equity will take jurisdiction, its object is merely to enjoin the defendant from trespassing upon complainant's land, and in such case the legal right must be determined in an action at law before there can be resort to a court of equity. There is here no allegation of the insolvency of the defendant or his inability to respond in damages for any trespass he may commit. The complainant's title to the land is not admitted but is expressly denied. The court affirmed the decree that dismissed the bill for want of equity.

■ There seems to be no question here but what the mother was entitled to occupy the premises in question. There is no report of proceeding so it is impossible for this court to determine what was said in the court below on this question. The finding of fact of the court below on this matter is conclusive. The language used by the court in the case of *Pease v. Kendall*, 391 Ill. 193 is appropriate:

"Had it been our view that the chancellor did not have jurisdiction of the subject matter, that contention might receive the consideration of the court upon proper presentation; but, to urge that error, appellant must then have incorporated in the record, on appeal, the evidence appearing at the trial on that matter. This was not done. Under section 64 (3) of the Civil Practice Act [Ill. Rev. Stat. ch. 110, par. 188, subpar. (3); Jones Ill. Stats. Ann. 104.064, subpar. (3)], it is not necessary that the decree recite special findings of

fact or that there be a certificate of evidence to support it. (Ill. Rev. Stat. 1943, chap. 110, p. 2431.) Where a party seeks to have a judgment reversed, the error must be made to appear by the Abstract. (Citing cases) This contention cannot be sustained.''

In the case of *Cragg v. Levinson,* 238 Ill. 69 is found language which abundantly supports the propriety of the lower court in granting the injunction herein;

''Our investigations have satisfied us that the weight of the more recent decisions sustains the conclusions we have reached that the bill in this case made a proper case for the exercise of the equitable jurisidiction invoked.

There was no allegation that the complainant's title had been established in an action at law, but that was unnecessary.

By demurring to the bill defendant admitted her title. In such a case there is no necessity for a resort to an action at law to establish it and a court of equity will not require resort to such action. (Pomeroy's Eq. Jur. sec. 252.) As the case is presented on this record, defendant admits that complainant owns and is in possession of the premises, and that he, without any right whatever, has repeatedly entered upon them and committed trespasses and intends to continue to do so; in effect, that without any claim of right whatever he has used, and intends to continue to use, appellant's premises as if they were his own, and that he has prevented, and will continue to prevent her from enjoying the lawful use and enjoyment of her own premises in the manner she desires and has the right to use them. His defense is, conceding all of this to be true, the complainant has a right of action against him at law to recover the damages she has sustained and will sustain from repeated trespasses. It may be admitted that the injuries are such as may be compensated in an action for damages, still the injuries are of such char-

acter that, while exceedingly annoying and vexatious, the actual damages recoverable would be so small as to be disproportionate to the expense and vexation attending the litigation.'' . . .

''As the question is presented in this record, we can see no good reason, in principle or upon authority, for requiring complainant to try the uncertain experiment of actions at law, that threaten to be numerous, for the protection of her admitted rights in the enjoyment of her property before permitting her to claim the protection of a court of equity. Clearly, under the state of this record, to hold that complainant is entitled to the writ of injunction does not deprive defendant of nor prejudice him in any right he has, for he does not claim any right.''

Appellant also complains that the decree is too vague and indefinite so that he is unable to be sure just how to comply therewith and argues that ''he may be entrapped into contempt of court because of the uncertainty of the provisions.'' He takes particular exception to one part of the decree which reads as follows: ''territory surrounding said building'' ''in the vicinity of the residence, lawn garden plot, chicken house, out house, pump or well thereon.'' We believe that if appellant would spend a little time in cultivating a few of the instincts of decency and manliness which he seems to lack, and conduct himself more like a son, he will avoid any entrapment.

Counsel for appellant also argue that the arrangement whereby the mother reserved the right to live on the farm did not contemplate that her daughter and son-in-law should move in with her. It is contended that a new contract was being made by the court in recognizing their rights to remain there. Certainly the mother, now aged and infirm should not be required to live there alone. Her right to remain there the remainder of her life certainly carries with

it the privilege of having associated with her whatever personnel her needs may demand.

We are confident that there is no remedy in a court of law to deal with such a caitiff. Only a court of chancery is clothed with that power that is called upon to provide a quick and effective remedy for such contumelious conduct.

The decree entered herein is affirmed.