## Pittsburg, C., C. & St. L. Ry. Co. v. Fannie Story.

63    239
f92   ¹552

63    239
s104  133

1. COUNSEL—*Improper Conduct of, etc.*—In the trial of an action against a railroad company for personal injuries, it is improper for counsel to seek to influence the passions and prejudices of the jury by interpolating into his argument statements without foundation in the evidence or justification from the circumstances, such as "I have no fault to find with the railroad company, except they will murder people and kill innocent women and children, sometimes."

2. SAME—*Duty of the Court.*—A trial court can not always keep counsel within proper bounds, but when they so far overstep the well recognized limits of legitimate argument their zealous excesses should be at least rebuked, and should never be sanctioned in the presence of the jury; the stamp of judicial approval upon such conduct is detrimental to the interests of a fair trial.

3. DAMAGES—*In Cases of Personal Injury.*—Exact compensation in cases of personal injury is incapable of ascertainment; what may be recoverable as a fair, reasonable and just compensation, must necessarily depend upon the varying circumstances of each particular case and can not be limited by fixed rules, and although the discretion of the jury

must be largely depended upon, yet the recovery, if any, and the amount of it must be based upon evidence.

4. SAME—*Mental Suffering.*—Elements of damages, mental as well as bodily suffering, when it is the result of an injury, may be properly considered in estimating the amount of damages in personal injury cases, but mental suffering not connected with the bodily injury, but caused by some conception arising from a different source, may not be considered.

5. WITNESSES—*Weighing the Testimony of.*—When the evidence of a permanent injury consists wholly in subjective symptoms dependent upon the statements and actions of the injured person and which, when taken in connection with other proofs, does not inspire the court with confidence, such fact should admonish the court to look with suspicion upon the other testimony of such person.

6. REMITTITUR—*Ordered in this Court.*—The court directs a remittitur of $6,000 to be entered within ten days, otherwise the judgment is to be reversed, etc.

**Trespass on the Case**, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JAMES GOGGIN, Judge, presiding. Heard in this court at the March term, 1896. Remittitur ordered, etc. Opinion filed March 31, 1896.

*Statements of counsel to which objections were made:*

Mr. Hardy: "I have no fault to find with the railroad company except they will murder people—will kill innocent women and children sometimes."

(Objection by appellant, and objection overruled.)

"If the proof is sufficient to show the company is guilty, and show also to what extent this woman has suffered, then it is your duty to find that railroad company guilty; you will say, 'We, the jury, find the defendant guilty,' as you would if they were on trial for murder, 'and we fix the plaintiff's damages at so many dollars.' "

(Objection by appellant.)

"Now, gentlemen, what will you pay this woman? It is said that sympathy ought not to prevail. No, it ought not to prevail. That is to say, it ought not to take the place of evidence. But if there is evidence upon which you can base your verdict, then you have a right to exercise sympathy. We claim $25,000. It is almost worth $25,000 to be compelled to go through such a siege as this woman has been compelled to go through. It has cost her no slight sum and it will cost her many another one before she gets her money if you find a verdict for her."

(Objected to by appellant.)

Mr. Hardy: "Find for this woman as you would have twelve men find for your mother, for your wife, if she sat in this room."

(Objected to by appellant.)

The Court: "You must not interrupt any more."

Geo. Willard and B. F. Richolson, attorneys for appellant.

The statements were unfair and highly prejudicial, and should not have been allowed. Chicago & A. R. R. Co. v. Bragonier, 13 Ill. App. 467; Chase v. City of Chicago, 20 Ill. App. 274; Hennies v. Vogel, 87 Ill. 242.

John M. Southworth, Charles M. Hardy and Julius Stern, attorneys for appellee.

Mr. Justice Shepard delivered the opinion of the Court.

The appellee was a passenger, bound from Chicago to New York, on one of the appellant's passenger trains.

Near a station named Tuscarawas, Ohio, the train in which appellee was so traveling collided with a west bound mail train on the same road, and the claimed injuries suffered by appellee were thereby incurred.

The trial in the Superior Court resulted in a verdict for $12,000, from which appellee remitted the sum of $3,000, and thereupon a judgment for $9,000 in favor of appellee was entered, and this appeal is from such judgment.

The appellee was about forty-six years of age, and resided on a farm in Wisconsin with her two sons and a daughter. She had lived there twenty-six years, and performed all the usual household duties, and was in good health before the accident. She testified that previous to the collision she averaged from 135 to 140 pounds in weight, and that at the time of the trial (four years after) her weight was 170 pounds.

In the collision the baggage-master was killed and another employe severely hurt, but no passenger except appellee was injured.

The collision occurred about eleven o'clock in the forenoon of May 7, 1891. The locomotive and the express and baggage cars were disabled, but the passenger coach in which appellee traveled was, at least, left fit for present use, and about the middle of the afternoon it was attached

to another train and appellee continued onward in her journey to New York, where she arrived about eleven o'clock the following day, and on the day after that proceeded on to her ultimate destination in Connecticut.

The only evidence the record furnishes of what her condition was after the accident, and prior to her reaching Connecticut, is found in the testimony of appellee. After she had been in Connecticut a "few days," according to her testimony, and some time in "the latter part of May, 1891," according to his testimony, a physician was for the first time called to treat her. That physician visited her twelve or fourteen times between his first call and June 17th following, and on the faith of her representations of pain and disability suffered by her, and of certain external bruises, contusions and discolorations seen by him on her person, he prescribed for her during that period.

Appellee remained visiting at her niece's house in Connecticut some six months, and until in November, 1891, when she returned to Chicago, visiting on the way her sister in Linesville, Pennsylvania, and a cousin in Pierrepont, Ohio.

She remained in Chicago for a while and then went to Wisconsin for a short time, after which she returned to Chicago, and through the intervention of a friend was accepted at St. Luke's hospital as a patient, and remained there three weeks, in February, 1892.

It was while in St. Luke's hospital that she for the first time had medical treatment after that referred to in Connecticut.

There were not many objective symptoms, to use the language of the doctor, of physical injury to her, visible at the time she entered St. Luke's hospital, nor do we understand from the evidence that any such have become apparent since that time.

The evidence from that time on, and there is a great deal of it, with reference to her injuries, deals wholly with subjective symptoms, and for its weight rests upon her own statements and actions; and there is in some of the medical testimony, in her own testimony, and in the clinical report or record of her case, made when she was an inmate of St.

Luke's hospital, considerable evidence of a lack of genuineness in her case—probably not of actual simulation of an injury not received, or of actual malingery, as recorded against the record of her case in St. Luke's hospital, but of an exaggeration of the injury, owing to a highly wrought up condition of the nervous system, produced primarily by the injury and intensified by brooding over it.

The only pecuniary loss suffered by the appellee, that is shown by the evidence, is her disability to pursue her usual avocations as before, and her expenses in endeavoring to be cured.   As to what such expenses were, appellee was asked by her counsel if she could state to the jury, or approximate, the amount of money she had expended for such purpose, and she replied that she could not, but added, " I should say in the neighborhood of $3,000; " and upon being asked if she were able to give the items, answered: "I am not; no, sir."

Her treatment in St. Luke's hospital was free, and that received by her in the Sanitarium at Joliet, for the two days that she remained there, was in return for services rendered by her.   And the physician who attended her in Connecticut testified that $15 would cover his entire bill for services to her.

Drawing all reasonable inferences from all the other evidence concerning what may have caused expense to her, it seems as if her estimate of $3,000 was needlessly extravagant, if not recklessly so.

Numerous errors have been assigned for a reversal of the judgment, among which the one calling in question the amount of the judgment on the ground of excessiveness, demands most serious consideration.

The trial was one of great length, and the result before a a jury, except as to amount of the recovery, was such as common experience lends expectation of where there is an injured passenger on the one side and a railway corporation on the other.

The appellee, however, was not entitled under the law to more than compensatory damages.   She was not entitled to

recover what a jury might, in the exercise of their sympathy, give to her, nor what the jury would have twelve men find for their mother or their wife, as they were urged to do by appellee's counsel in the closing argument. Nor was it proper for counsel to seek to inflame the passions and prejudices of the jury by interjecting into his argument to them a statement, without foundation in the evidence or justification from the circumstances, such as "I have no fault to find with the railroad company, except they will murder people—will kill innocent women and children sometimes." A trial court can not always keep counsel within proper bounds, but when they so far overstep well-recognized limits to legitimate argument, their zealous excesses should be at least rebuked, and should never be sanctioned in the presence of the jury, as was done by the court below in peremptorily overruling timely objection made thereto, and, in one of the above instances, adding a caution to objecting counsel that he "must not interrupt any more."

The exceptions to such language were well taken, and the offending counsel instead of the objecting one should have been judicially cautioned against a repetition. The stamp of judicial approval upon such methods of argument could hardly help being detrimental to the interests of a fair trial.

Exact compensation in cases of personal injury is incapable of ascertainment. What may be recoverable as a fair, reasonable and just compensation must necessarily depend upon the varying circumstances of each particular case, and can not be limited by fixed rules, and although the discretion of the jury must be largely depended upon, yet the recovery, if any, and the amount of it, must be based upon evidence. C. E. & L. S. Ry. Co. v. Adamick, 33 Ill. App. 412.

Mental, as well as bodily suffering, where it is the result of injury, may be properly considered in estimating the amount of damages. But mental suffering not connected with the bodily injury, but caused by some conception arising from a different source, may not be considered. Chicago v. McLean, 133 Ill. 148.

That the accident happened, and that the appellee was injured, and that the appellant is bound by law to make her full compensation for her injuries, the evidence furnishes abundant proof.

But concerning the extent of such injuries, we think the record fails to justify so large a judgment as was rendered.

As has been already said, the evidence of any serious and permanent injury to appellee consists wholly in subjective symptoms, which are dependent upon her own statements and actions for verification and foundation. Under such circumstances, very great caution should be observed.

Looking only at the record, the appellee does not inspire us with much confidence in her statement of facts concerning which other proof is preserved, and hence we can not avoid a distrust as to those facts of which her testimony furnishes the only evidence. That circumstance "should admonish us to look with suspicion upon whatever else he (she) may choose to swear to," as was said by Mr. Justice Caton in a case (Fryrear v. Lawrence, 5 Gil. 325, p. 329) where one swore to hearsay matters as being within his own knowledge. See also Earle v. Earle, 60 Ill. App. 360, p. 367.

Appellee testified among other things concerning the results of the collision to the car that she was in, as follows:

"The stove was overturned, the lamps were shattered and broken, the oil falling all over the passengers; the window glass was shattered and the car took fire, and the rear end of the car seemed to be thrown up a great distance."

We have not exhausted the record with reference to each of the details she so testified to, but it was clearly established by other evidence that the stove was not overturned, that the car did not take fire, that the windows, with perhaps one exception, were not broken, and that if any lamp was broken, no one complained of oil falling upon them.

This testimony of the appellee was probably not at all material to her right of recovery, but it shows her unreliability and tendency to exaggeration.

If she is so prone to magnify immaterial matters, what

confidence can we place upon her testimony as to material facts?

Moreover, her testimony heretofore referred to, regarding the expense she had incurred in her endeavors to become cured, is so utterly and recklessly exaggerated beyond any facts shown, and is so entirely improbable, considering her apparent means, as to cast further suspicion upon all her statements.

Considering, therefore, appellee's own testimony in connection with the uncertainty of much of the medical evidence and the records of St. Luke's hospital, wherein the diagnosis of her case is set down as "Malingery," and we feel that there has not been that certainty obtained regarding the extent of her injuries as warrants us in sustaining a judgment which of itself amounts to a small fortune, and is far in excess of what we think the record shows would constitute full compensation.

Entertaining these views, we pass over the other causes assigned for error, which, if material, may easily be obviated by a closer adherence to settled law upon another trial.

It seems, however, from a careful consideration of the whole record, that the appellee should have recovered a reasonable judgment, and if appellee shall elect within ten days to enter in this court a remittitur of six thousand dollars from the judgment of the Superior Court, the judgment will be affirmed for the amount so remitted down to; otherwise the judgment will be reversed and the cause remanded.

GARY, P. J.

I concur in the result, upon the ground that when a woman passenger says she was injured in the attempt by a railway to pass one car by another upon a single track, the railway will always have to pay for it.