**Owen Barton Jones and George A. Bates, Appellants, v. Commonwealth Edison Company et al., Appellees.**

**Gen. No. 39,821.**

Opinion filed December 13, 1938.

POPE & BALLARD, of Chicago, for appellants; HERBERT POPE, FERRIS E. HURD and RALPH E. BOWERS, all of Chicago, of counsel.

WILSON & McILVAINE and TAYLOR, MILLER, BUSCH & BOYDEN, both of Chicago, for appellees; CHARLES Y. FREEMAN, CLAY JUDSON, J. H. SHELDON LEE, JR., FRANCIS X. BUSCH, PRESTON BOYDEN, and CASSIUS M. DOTY, all of Chicago, of counsel.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Owen Barton Jones and George A. Bates, plaintiffs herein, as stockholders of Commonwealth Edison Company (hereinafter referred to as Edison) filed a bill of complaint in the superior court in December, 1933, and an amended bill in June, 1935, on behalf of themselves and such other stockholders of Edison as might desire to join in the proceeding and bear their share of the litigation expenses, by which they sought to set aside certain contracts made in 1929 and 1932 between Edison and Public Service Company of Northern Illinois (hereinafter called Public Service) and two other public utility companies, and to recover on behalf of Edison certain payments which had been made under these contracts. That suit has been pending in the

superior court for more than 4 years. Afterward on December 29, 1936, while the proceeding was still pending and undisposed of in the superior court, Edison sent out a notice of a stockholders' meeting to vote upon a reorganization plan, including the acquisition of Public Service stock by Edison. Plaintiffs then filed their first supplemental complaint, in which they sought to enjoin the stockholders' meeting. After a hearing the court denied the prayer of the supplemental complaint and dismissed it for want of equity. The stockholders' meeting was then held and the plan for reorganization adopted. Thereafter, plaintiffs filed their second supplemental complaint to enjoin the carrying out of the proposals authorized at the stockholders' meeting, including the acquisition by Edison of Public Service stock. After a hearing the prayer of the second supplemental bill was denied and the complaint dismissed. Plaintiffs have appealed from the last decree thus entered.

It is conceded that this appeal does not involve any of the issues in the original complaint, but a summary of the entire litigation will be helpful to a better understanding of the contentions made by the respective parties.

Edison is a public utility, furnishing light and power to consumers in Chicago. Public Service performs the same function for the suburban and rural territory immediately adjacent to Chicago, extending largely to the north and west. Western United Gas & Electric Company and Illinois Northern Utilities Company serve neighboring and adjacent territory in northern Illinois, reaching out to points as far west as the Mississippi. In the summer of 1936 Edison owned, directly or indirectly through a wholly owned subsidiary, valuable investments in these other three companies. The four utilities together form an integrated power system of which Edison is the hub.

Since 1925 there has been in existence a contract known as the interchange energy contract, which pro-. vides for the pooling of generating capacity by Edison, Public Service and the other two utilities serving this territory. By an amendment to that contract in 1929 a large amount of capacity was made available to Edison and a large amount of electrical energy was taken by it from the other companies. The original bill of complaint is predicated upon amendments made to the interchange energy contract in 1929 and the payments made thereunder to Public Service. It appears that for some years, as far back as 1925, Edison had been faced with physical conditions which restricted its ability to generate power for distribution within its own territory. By the summer of 1936 these conditions resulted in compelling Edison to acquire approximately 47 per cent of its total power from stations outside its geographical district and it was forced to use the transmission lines of other companies to bring this power into the Chicago territory. The acquisition of the stock of these three companies by Edison was therefore considered necessary, not only from a practical operating standpoint, but also to bring about a simplified financial capital structure.

The original bill was filed by plaintiffs in 1933. They then owned 982 shares of Edison stock of a total outstanding capitalization of 1,633,728 shares, or considerably less than 1 per cent of the entire issue. The original bill, purporting to be in the nature of a class suit, asked relief in connection with payments made by Edison to Public Service under the interchange energy contract amounting to many millions of dollars. It set forth and complained of the payments made by Edison to Public Service over a long period of years preceding 1933, which are characterized as a wrongful diversion and misappropriation of funds, and asks that the action of Edison be declared fraudulent and void,

that an accounting be had as to the payments which are alleged to have been unlawfully and wrongfully made to Public Service and that the latter pay to Edison the amount found by said accounting to be due.

In its annual report to stockholders for 1933 Edison advised its stockholders that the original bill of complaint had been filed attacking operations under the interchange energy contract; that the directors had requested a well known firm of engineers to analyze the contract; that the engineers had made a report to the management finding that operations under the agreement had resulted in a minimum practical cost for power to each company; and that the management was convinced that the contract was fair and equitable. The following year the annual report to stockholders advised them that joint answers to the original bill had been filed by counsel for defendants, and again expressed the opinion that the agreement was fair and equitable. Edison's annual report for 1935 likewise contained a statement relating to the lawsuit, advising stockholders that an amended bill of complaint had been filed and stating that "the management continues to believe the contract as amended will be sustained." During this period and until 1937 numerous stories appeared in the metropolitan press of Chicago, commenting upon either the litigation involved in the original bill or plaintiffs' attempts to get an injunction against the stockholders' meeting. Substantially three-fourths of the Edison stockholders then resided in Chicago, and some 13 per cent or 14 per cent lived in Illinois, outside of Chicago.

The stockholders' meeting sought to be enjoined in the first supplemental complaint was set for January 23, 1937. Events that transpired during the preceding summer and which culminated in that meeting may briefly be summarized as follows: August 4, 1936, James Simpson, chairman of the board of directors of

both Edison and Public Service, addressed a communication to Owen D. Young of New York, expressing the desire of Edison to acquire complete ownership of the stock of Public Service, and he sought to enlist Mr. Young's services and advice in arriving at a fair basis of exchange. Edison then owned approximately 35 per cent of Public Service stock. Simpson's letter outlined the task Mr. Young would be asked to perform, including the study of the engineers' reports, when completed, and his own recommendation to the Edison directors as to the basis of exchange. At approximately the same time Simpson wrote Ford, Bacon & Davis, Inc., and Stone & Webster Engineering Corporation, two independent engineering firms, requesting them to make independent investigations as to the relative value of the stocks of the two companies and to consider the effect to be given to the pending lawsuit and the questions raised therein involving the interchange energy contract and its various amendments. After some 4 months the engineering firms made their respective reports. Stone & Webster Engineering Corporation, representing Public Service, were of opinion that one share of Public Service stock should be exchanged for 4/5ths of a share of Edison, or a ratio of 80 to 100. Ford, Bacon & Davis, representing Edison, recommended that the exchange should range between 69/100ths and 78/100ths of a share of Edison for 1 share of Public Service. Both groups of engineers had reported the interchange energy contract a fair one from an engineering standpoint and based upon these findings Mr. Young, on December 14, 1936, reported to Mr. Simpson that after studying the engineers' reports and without giving weight to the lawsuit then pending, he was prepared to recommend the exchange of 3/4ths of a share of Edison stock for each share of Public Service. Before making his recommendation and as part of his study of the interchange basis, Mr. Young had investigated the lawsuit then

pending and had held a number of conferences with plaintiffs' attorneys and representatives wherein the situation was discussed and arrangements made so that technical advisers of plaintiffs might discuss the matter with the two engineering firms. After receiving the final reports of Ford, Bacon & Davis, Inc., and of Stone & Webster Engineering Corporation, both dated early in December, 1936, and the recommendations of Mr. Young which were forwarded under date of December 14, 1936, a stockholders' meeting was set for January 23, 1937. Notice of this meeting, including a statement as to the various matters that were to be voted on, was mailed to the stockholders December 29, 1936, and with the notice was included a letter written and signed by the directors of Edison.

The principal question involved in this appeal is whether this notice to stockholders, with the accompanying directors' letter, furnished them with sufficient information regarding matters to be voted on at the meeting, as well as of the relations between Edison and Public Service. Plaintiffs complain of the notice, not because of its failure accurately to describe the propositions to be voted on, but because the notice is alleged not to describe sufficiently the question raised by plaintiff's main litigation and the matters connected therewith. It therefore becomes important to summarize in detail the information given to the stockholders prior to the meeting of January 23, 1937.

The notice and the letter of the directors constitute a voluminous document consuming approximately 26 printed pages of the abstract of record. The notice set forth that the meeting was being called to consider certain resolutions, including one to adopt the plan of reorganization, pursuant to which Edison was authorized to acquire the stock of Public Service in exchange for its own stock at the ratio recommended by Mr. Young, as well as to acquire the stocks of Western United and of Illinois Northern. Accompanying the

notice was a letter from the board of directors, pointing out the reasons which made desirable the acquisition of the stock of these three companies by Edison. With respect to the interchange energy contract, the directors' letter gave a comprehensive review of the facts and of substantially everything that Edison had done up to that time in connection with the lawsuit and contained excerpts from Mr. Young's letter of December 14, 1936, as will be noted from the following: "As a part of this review (meaning the review of the values of the stock of Edison and Public Service for purposes of exchange), the respective firms of engineers were particularly requested by your Company and Public Service Company of Northern Illinois to make a careful study of the so-called Interchange Energy Contract, the litigation in connection with this contract having already been brought to the attention of the stockholders of this Company in the Annual Reports of 1933, 1934, and 1935.

"If the complainants in this litigation should be entirely successful in every contention made by them, it is possible that Commonwealth Edison Company might recover a very large sum of money from Public Service Company of Northern Illinois. A statement with respect to the Interchange Energy Contract and the litigation is added to this letter.

"The engineers who were employed by Commonwealth Edison Company and who, with Mr. Owen D. Young, have recommended the ratio of exchange of Commonwealth Edison Company stock for Public Service Company of Northern Illinois stock, gave careful consideration to the effect of the Interchange Energy Contract and this litigation on the proposed exchange. As a result of the investigation and analysis made by Ford, Bacon & Davis, Inc., and Stone & Webster Engineering Corporation, independently of the companies and of each other, the conclusion arrived at was

that the contract in its present form is fair and equitable between the parties. They found that, so far as the facts were concerned, there was no reason to vary the ratio of exchange by reason of any of the claims made in the litigation. They did not pass on any technical legal questions which might be involved.

"Mr. Owen D. Young, in writing to the Company recommending the basis of exchange now presented to the stockholders, said:

" 'I gave attention also to the pending lawsuit involving the Interchange Energy Contract and I had several interviews with the counsel and other representatives of the complainants in that proceeding. Inasmuch as both groups of engineers have reported that in their judgment, from an engineering standpoint, the contract was a fair one and that in fact it has worked no injustice to the Commonwealth Edison, I am driven to the conclusion that the suit must largely rest on technical legal grounds, which can better be appraised by you under advice of your counsel than by me.

" 'On the whole, after studying the engineers' reports and weighing as best I can the elements in which judgment and evaluation of opinion are a factor, but without giving weight to the law-suit, I am prepared to recommend the exchange of three-fourths ($\frac{3}{4}$ths) of a share of Commonwealth Edison Stock for each share of the common stock of the Public Service Company of Northern Illinois.'

"Our counsel advise us that, from a technical legal standpoint, the existence of this law-suit and the claims made therein do not furnish a basis for changing the ratio of exchange recommended by the engineers and Mr. Young.

"As a result of all these opinions that the contract is fair and has worked fairly, your Directors join in the belief that no weight should be given to the law-

suit relative to the contract in recommending to the stockholders the approved ratio of exchange.'' In addition to this review of the situation the directors appended to their letter a separate document covering over 2½ pages, headed, ''Interchange Energy Contract and Litigation,'' which described the agreement itself and stated that a bill of complaint had been filed questioning the validity of certain payments made thereunder by Edison, principally to Public Service. The directors' statement also set forth· Edison's position with respect to its experience with the interchange energy contract, and explained the reasons for the payments made under the contract and advised the stockholders that copies of the amended bill and answers were available to any stockholder on request to the secretary of the company. It thus appears that prior to the meeting of January 23, 1937, the stockholders were apprised of the entire history of the procedure by which the ratio of exchange was fixed, what the findings of the engineers had been with respect to the interchange energy contract, and full details of the status of the litigation up to that time. The stockholders' attention was also called to the fact that in previous annual reports they had been advised of the pendency of the original suit and finally they were told that copies of the pleadings were available on request to the secretary of the company.

Plaintiffs concede that the stockholders were apprised of the matters hereinbefore indicated, but they take the position that the meeting was called to obtain ratification of the wrongful acts about which complaint had been made in the original proceeding, namely, payments of very large sums of money totaling millions of dollars by Edison to Public Service under the interchange energy contract and amendments thereto. They say that these payments constituted an unlawful diversion of the funds of Edison and were wholly gratuitous and without consideration; that the perti-

nent facts regarding these payments were not disclosed to the stockholders, and even if they had been disclosed the stockholders were without power to ratify the payments so as to bind dissenting stockholders because they were donations or gifts of Edison's corporate funds. In other words, it is argued that because the story had not been told to stockholders of Edison's prior relations with Public Service and the legal consequences thereof, they did not have the information necessary to enable them to form a just judgment upon the matters to be taken up at the meeting. The principal matters as to which plaintiffs claim that there had not been a full disclosure are set forth under 8 separate paragraphs in the second supplemental complaint.

It is first urged that the nature of the controversy presented by the original proceeding was withheld from the stockholders. We find, however, that a part of the letter from the board of directors contained a statement devoted solely to this litigation, including the following: "Its [the amended bill] chief contention is based on the amount of payments which were made by Commonwealth Edison Company to Public Service Company as the result of certain amendments to the contract which were made in 1929 to secure necessary additional capacity for Commonwealth Edison Company in the most efficient location, which was then in the Public Service Company territory and seeks to have these amendments declared void as to Commonwealth Edison Company and set aside and asks for an accounting for all sums paid by the Company to Public Service Company under the provisions of the amendments complained of." This statement fairly summarizes the nature of the controversy presented by the amended bill of complaint and any stockholder who wished to avail himself of additional detailed information was at liberty to obtain copies of all the pleadings in that proceeding.

It is next urged that the extent of the payments which plaintiffs claim have wrongfully been made to Public Service by Edison were not disclosed to the stockholders. The directors' letter contains the following paragraph dealing with this subject matter: "If the complainants in this litigation should be entirely successful in every contention made by them, it is possible that Commonwealth Edison Company might recover a very large sum of money from Public Service Company of Northern Illinois. A statement with respect to the Interchange Energy Contract and the litigation is added to this letter." Of course, no specific sum was mentioned in the letter for the obvious reason that plaintiffs sought an accounting and it could not then be definitely ascertained what sum would be payable in the event that plaintiffs should obtain a decree in their favor.

Complaint is also made that the stockholders were not advised of the relation of the officers and directors of Edison to Public Service. This contention is predicated upon the fact that Simpson was president and a director of both companies and that one of the vice presidents was an officer of both Edison and Public Service. These facts, however, were well known, as indicated by some 50 news stories introduced in evidence covering the period from June, 1932, to February, 1937, most of which commented upon and made clear the fact that Simpson was chairman of both companies, and presumably the stockholders were familiar with these facts. In any event the determination of the ratio of exchange of stocks was not made or influenced by any officer or director, but was made by independent engineers and Mr. Young who were retained for that purpose.

It is further urged that there was no disclosure of stock ownership in Public Service by the officers and directors of Edison. This question was raised at the hearing before the chancellor and defendants forth-

with presented to the court a statement covering the stock holdings of the Edison board of directors, which discloses that no director of Edison owns as much Public Service stock as he does Edison; that six of them own either one share of Public Service or no shares at all; and that Simpson, who is chairman of the board, owns one share; that the United States Trust Company of New York, as trustee, owns a large block of stock in both Edison and Public Service in an irrevocable trust for Simpson's sons in which the settlor has no interest whatsoever.

Complaint is further made that there was no disclosure that counsel who advised Edison that it had no claim against Public Service also represented Public Service in defending the litigation. These facts must have been clear to all stockholders, for in dismissing the first supplemental complaint the trial court pointed out that "the annual report to Edison stockholders in 1934 fully advised the stockholders that the defendants had united in this suit, and the pleadings filed will show that." As a matter of fact all of the pleadings show on their face that the same counsel have always represented all defendants in the case for the obvious reason that all defendants, as well as their officers, have consistently supported the fairness and validity of the interchange energy contract, and the pleadings which were available on request would have disclosed this fact.

It is further urged that there was no disclosure of the reports of the engineers who recommended the ratio of exchange and the elements upon which they relied. This contention is untenable because the findings of the engineers were fully and accurately reported to the stockholders by means of the directors' letter attached to the notice.

Plaintiffs also complain that there was no disclosure of the alleged recommendation of Mr. Young that the ratio of exchange be reduced from 3 to 4 to 7 to 10

because of the claim against Public Service and in favor of Edison set up in plaintiffs' amended bill of complaint. This reduction is alleged to have equalled substantially $3,000,000 in the equity of Public Service. Mr. Young stated his position in affidavits presented at the trial of the second supplemental complaint, which disclose that his earliest impressions favored a 7 to 10 ratio, but after examining the engineers' reports and counselling with his own assistants he became convinced that 7½ to 10 was a fairer ratio, and he admitted in his affidavit that he was inclined to consider a reduction of the ratio if the lawsuit were disposed of because he felt that it would be in the interest of stockholders of both companies that the exchange should be made promptly and should be free from litigation. Young's position was clearly stated in his letter of December 14 to Edison and excerpts from that letter, indicating the conclusions reached by Young and his reasons therefor, were quoted in the letter attached to the notice to stockholders.

The remaining objection is that defendants failed to disclose that the acquisition by Edison of the capital stock of Public Service will prevent recovery from Public Service for payments alleged to have been wrongfully made by Edison. We find that the directors said in their letter to stockholders that if plaintiffs were entirely successful in every contention made by them that Edison might recover a very large sum of money from Public Service; that Edison already had a very substantial interest in the stock of Public Service; and they were told that they would be asked to vote upon the acquisition of the remaining shares. The stockholders were thus advised that to whatever extent Edison became the owner of shares of Public Service, a recovery by Edison against Public Service would to that extent be affected.

The sum and substance of plaintiffs' complaint is that the payments made by Edison to Public Service were wrongful and unlawful and were so concealed by means of amendments made to the interchange energy contract that stockholders were never fully apprised of the real nature of the transaction, and that until it can be determined through a hearing of the main litigation, which is still pending, whether or not these transactions between the two companies were fair, even a stockholders' meeting could not ratify them. It is argued that no information was given stockholders on this phase of the case; that the vast sums of money paid by Edison to Public Service from 1929 to 1936 under the interchange energy contract and amendments thereto created a value for Public Service stock which Young used to fix a ratio, and that if these sums had not been paid, illegally as plaintiffs claim, no such ratio would have been considered.

There are several answers to these contentions. It is conceded, of course, that the subject matter of the original proceeding, which had been pending in the superior court for more than 4 years, is not directly involved in this appeal. The only issue before this court is the sufficiency of the notice with the accompanying directors' letter sent out for the meeting of Edison stockholders January 23, 1937. That notice sufficiently apprised stockholders of the issues involved in the main litigation and informed them, if they did not already know, that plaintiffs sought to recover on behalf of Edison large sums of money theretofore paid under the interchange energy contract and amendments thereto. The nature of this contract was explained to them and they were advised that two independent engineering firms and Mr. Young considered the contract fair from an engineering standpoint. Through this information the stockholders were sufficiently informed as to the purpose which plaintiffs

sought to accomplish by means of that proceeding, and if any stockholder had desired further details with reference to the alleged wrongful payments made by Edison to Public Service, and the consequences thereof as affecting his holdings of Edison stock, the means of information was easily available. Notwithstanding these facts, none of the stockholders ever joined plaintiffs in the contentions made in the original proceeding or objected to the ratification of actions taken by the directors of Edison.

The courts of various States have dealt with situations where the form and sufficiency of notice to stockholders called to ratify mergers and reorganizations of various kinds were considered. In *Continental Ins. Co. v. New York & H. R. Co.*, 187 N. Y. 225, 79 N. E. 1026, the Harlem Railway leased part of its road to the New York Central and a dispute arose as to which party should get the benefit of the lower rate of interest in the refinancing of certain bonds on the property. A committee consisting of three directors who were not common to both companies compromised the matter and a majority of the stockholders in both companies approved the compromise. Afterward stockholders of the Harlem Railway Company sued to have the compromise adjudged void, and among the various contentions made was the inadequacy of the notice for the stockholders' meeting. With reference to this contention the court said (p. 240) : ''It is contended that the circular issued to the stockholders calling the meeting to act on the proposed compromise was misleading and insufficient. Of course, any circular that might have been issued would be subject to some criticism. Minds differ, and one person would suggest one change, one another. Not a single stockholder that voted for the ratification of the compromise has complained that he was in any way misled or has sought to repudiate his action. The controversy was of long duration and

of some public discussion. As early as December, 1896, or nearly two years before the stockholders' meeting, the eminent counsel for the plaintiff, Mr. Trull, in an elaborate opinion, which is found in the case, had advised that company that the claim of the Central Railroad was without foundation and that the Harlem Company and its stockholders were entitled to the reduction in the interest charges on the road. *The plaintiff at all times knew the exact situation of the controversy, and, if it had any fears as to its co-stockholders being misled, it could have apprised them of the true state of the case, if they deemed the circular insufficient in any respect.''* (Italics ours.)

A similar contention was made in *Cooper v. Central Alloy Steel Corp.*, 43 Ohio App. 455, 183 N. E. 439 (1931), wherein a minority stockholder sought to set aside certain merger agreements on the ground that the ratio of exchange of shares had been arbitrarily and fraudulently arrived at, and the claim was there also made that notice of the stockholders' meeting called to ratify the plan was inadequate. However, the court held (p. 469): ''It is also strongly asserted that defendant Jones misled his directorate and stockholders in the form and insufficiency of his notice of the stockholders' meeting called to ratify the merger plan. We are not impressed with this assertion. The notice is regular and sets forth the basis of exchange. It would have been next to impossible to have stated in the notice all that was proper matter for discussion in the stockholders' meeting called to approve the resolution proposed, which was subsequently adopted by the vote of 419,740 Alloy shares.''

In *Citrus Growers' Dev. Ass'n v. Salt River Water Users' Ass'n*, 34 Ariz. 105, 268 Pac. 773 (1928), it was contended that a special election held under the articles of association to authorize a bond issue was void because the notice did not sufficiently advise the share-

holders of the questions to be voted upon, but the court said (p. 114): ''In this case the notice states clearly the general nature of each proposition to be voted and that a copy of the proposition could be seen at the office of the secretary. We think this was sufficient notice that each question submitted covered all matters appearing in the proposition so on file, as well as all things appearing in any of the official minutes and records of the association which were referred to in such proposition.''

The notice sent to the stockholders in this proceeding was unusually voluminous, and dealt not only with the resolutions and matters to be voted on at the meeting, but contained a statement as to the original litigation, what plaintiffs sought to accomplish thereby, the position of the defendants with reference to the charges made, including the alleged illegal and wrongful payment of large sums of money by Edison to Public Service and the possible legal consequences thereof in the event that plaintiffs should obtain a decree. Where a notice to stockholders sufficiently apprises them of the matters to be considered at the meeting, gives them information upon which they may exercise an intelligent judgment with reference to the proposed questions, and opens up the avenue for such additional information as stockholders may desire to obtain, that is sufficient. We think this notice went beyond the ordinary requirements imposed by law under similar circumstances.

It was urged by defendants that after the first supplemental complaint was dismissed, whereby plaintiffs sought to enjoin the holding of the stockholders' meeting January 23, and no appeal having been taken from that order, that plaintiffs are estopped to raise the same question under the second supplemental bill, and during the pendency of this appeal defendants moved to dismiss the same on the ground that the events

sought to be enjoined by the second supplemental complaint have already occurred, and that the issues raised therein have become in substance and effect moot, since the Illinois Commerce Commission and the Securities Exchange Commission have both approved the exchange of stocks and all the resolutions approved at the meeting have been carried out, so that nothing remains to be done. In view of our conclusion as to the principal question involved, we see no useful purpose in extending this already lengthy opinion by a discussion of these issues. The motion to dismiss is denied.

We are of the opinion that the chancellor properly dismissed the second supplemental complaint for want of equity. The decree of the superior court is affirmed.

*Decree affirmed.*

JOHN J. SULLIVAN and BURKE, JJ., concur.