Mary R. **BUSHERS**, Barney L. Bushers, Plaintiffs,

v.

**GRACELAND CEMETERY ASSOCIATION OF ALBION, ILLINOIS**, James Allen and Harvey Allen, partners, doing business under the firm name of Allen Brothers, Defendants.

Civ. No. 1585–D.

United States District Court
E. D. Illinois.
Dec. 24, 1958.

Theodore Lockyear, Evansville, Ind., for plaintiffs.

Harold N. Harrison, Fairfield, Ill., for James and Harvey Allen.

John E. Holland, Albion, Ill., for Graceland Cemetery Assn.

PLATT, Chief Judge.

Plaintiffs, citizens of Indiana, brought this action to recover damages in the amount of $20,000 each, and to obtain an injunction to restrain the defendants from continuing to operate and to remove an oil pump now located in the cemetery. The defendants are the Graceland Cemetery Association of Albion, Illinois, and James and Harvey Allen, citizens of Illinois, partners, doing business as Allen Brothers. The defendants have answered denying that the plaintiffs are entitled to damages or any relief.

It was stipulated by the parties that the court should determine the issues

from the verified pleadings, affidavits, and exhibits thereto attached together with the stipulation as to facts; and the stipulation of facts is to control where there is a conflict between the affidavits and the stipulation. Only the plaintiffs offered evidence on damages.

The essential facts are not disputed. The Graceland Cemetery Association was duly organized under the statutes of the State of Illinois as a not for profit corporation, and a corporate charter was duly issued in 1897. The Association was vested with a fee simple title to land in Edwards County, Illinois, which was duly platted and dedicated in 1897, and has been operated, maintained and controlled as a cemetery since that time. In 1922 the Cemetery Association obtained a fee simple title to additional land which it also platted and dedicated as an addition to the cemetery, and it was in this section of the cemetery that the plaintiffs owned a burial lot wherein their deceased son was buried in August 1953. September 4, 1954, the Association executed a non-drilling oil and gas lease to the defendants, Allen Brothers, embracing the land within the platted grounds of the cemetery. On June 29, 1955 the directors of the Association executed a lease on this land to Allen Brothers for the exploration of oil. On October 5, 1955, the Graceland Cemetery Association caused a notice to be published in the Albion Journal Register, of Albion, Edwards County, Illinois, where the cemetery is located, which reads as follows:

"Notice
"To all owners of lots in Graceland Cemetery, Edwards County, Illinois:
"You are hereby given notice that a meeting of all lot owners in said cemetery is called for the 21 day of October, 1955 at 7:30 o'clock p. m. at the Court House, Albion, Illinois.
"H. G. Frankland,
"Pres.
"F. E. Shock,
"Secy.
"For Board of Trustees."

Pursuant to the notice a meeting was held on that date. The minutes of this meeting disclose that 39 persons were present at the opening of the meeting, and H. G. Frankland presided. He explained the purpose of the meeting was "to ratify the action of the Directors in leasing the cemetery for drilling of an oil well to be located on the unsold and unused portion of the grounds." The lease executed by the directors was approved by a vote of 32 to 12. Pursuant to notices duly published in the Albion Journal Register beginning October 26, 1955, the oil and gas lease on the land owned by the Cemetery Association was sold on November 12, 1955 at public auction to the defendants, Allen Brothers. A drilling permit was issued by the Department of Mines and Minerals of the State of Illinois, December 12, 1955.

On May 14, 1956, Graceland Cemetery Association filed in the Recorder's Office a ratification of the non drilling oil and gas lease executed to Allen Brothers under date of September 4, 1954.

In early June, 1956 drilling operations were started by Allen Brothers which resulted in the production of oil. The pump was located in a driveway of the platted area of the cemetery, 58 feet from plaintiffs' lot, and 69 feet 11 inches from the grave. It was stipulated at the hearing that the plaintiffs had no knowledge of the lease, the meeting, the drilling of the well, or of its completion until they visited the cemetery in the latter part of July or August, 1956 when the pump was in operation.

From the evidence offered by the plaintiffs the court finds the following facts. The Bushers visited the cemetery on Memorial Day when there was no evidence of exploration for oil. When the Bushers next visited their son's grave they saw the well in operation. Mrs. Bushers became quite sick and nervous, did not sleep well, and suffered from headaches. Her disposition changed and she became irritable toward her husband and three children. She could do no housework for about a year and a half. She was treated by Dr. Peters, an osteo-

pathic physician. Mr. Bushers was also disturbed and irritated. Prior to the latter visit to the cemetery the Bushers were in good health. The court finds that the mental anguish suffered by the Bushers was proximately caused by the presence of the well in the cemetery.

Defendants contend that they did not trespass upon the plaintiffs' property because a valid oil and gas lease was executed and ratified in accordance with Ill. Rev.Stat., 1957, Ch. 21, § 8.[1]

 Assuming that section 8 was applicable an examination of the proceedings to ratify the lease clearly indicates that the drilling lease was not legally authorized. First, the notice of the meeting failed to state the purpose, viz., to acquire permission of the lot owners to execute a lease to a portion of the cemetery. 18 C.J.S. Corporations § 544(3), p. 1230; Thompson, Corporations, Third Edition, Vol. 2, ¶924, p. 280. Also see Jones v. Commonwealth Edison Co., 1938, 297 Ill.App. 513, 18 N.E.2d 113. Second, the minutes do not disclose that a quorum of the lot owners were present at the meeting, or that those who did attend were lot owners. Third, at the meeting a vote was taken "to ratify the action of the Directors in leasing the cemetery for the drilling of an oil well to be located on the *unsold and unused portion* of the grounds." (Emphasis supplied.) The statute authorizes the sale of land "not *suitable or required* for burial purposes * * *." (Emphasis supplied.) The facts stipulated did not in any way estab-lish that any portion of the cemetery was "not suitable or required for burial purposes." There were graves close to the oil well, and this area was platted. The oil well was not located in the unused portion of the cemetery. Fourth, the minutes of the meeting stated that 39 persons were present at the opening of the meeting and there were 32 yea and 12 nay votes, a total of 44 votes cast. Fifth, the directors, after due publication, attempted a public sale of an oil and gas lease on lands owned by the Cemetery Association. While Allen Brothers were the successful bidders, it is obvious that the Cemetery Association had already executed two leases to portions of the cemetery. The statute explicitly states that "the directors shall first call a meeting." The ratification executed and recorded by the directors ratifies the non-drilling lease dated September 4, 1954. No other conclusion can be reached than that the Cemetery Association failed to comply with said section 8 of the statute.

 In view of other sections of chapter 21, Ill.Rev.Stat., 1957, it may be inferred that section 8 was not intended to apply to the sale of lands platted and dedicated for burial purposes, but to land owned by the cemetery association and never used as a part of the cemetery. In 1874, section 3 was enacted to provide that cemetery companies incorporated by special law might sell lands "outside * * * [the cemetery] boundaries for other than burial purposes."[2] In 1891,

1. "8. When land may be sold

"Cemetery associations incorporated by the laws of this state, and owning land in any cemetery located in any county of less than one hundred thousand inhabitants, shall have power to sell such lands so owned by said association and not suitable or required for burial purposes, and in which no person shall have been buried: Provided, That the trustees or other officers having control of such cemetery, shall first call a meeting of the lot owners in such cemetery, at which a vote shall be taken in regard to such sale, and if a majority of the votes so cast shall be in favor of such sales, the trustees or other officers having con-trol of such cemetery shall have power to sell such lands, as hereinafter provided." (In effect 1875.)

2. "3. When cemetery land may be sold

"In all cases where cemetery companies, incorporated by special law, have been or shall be prohibited by any act of the legislature or municipal ordinance from occupying any land purchased for burial purposes, and the boundaries limited by such law or ordinance, it shall and may be lawful for any such company to sell and convey the land outside of such boundaries for other than burial purposes." Ill.Rev.Stat., Ch. 21, 1957. Approved February 12, 1874, in force July 1, 1874.

cemetery associations incorporated under either general or special laws were allowed to acquire, "own and convey for burial purposes only, so much land as may be necessary, not exceeding twenty acres, for use as a cemetery or burial place for the dead." [3] This section was adopted while section 8 was in force prescribing the method of sale of lands "not suitable or required for burial purposes * * *." In 1895 the limitation of twenty acres was deleted to allow all cemetery associations to "own and convey for burial purposes only, so much land as may be necessary for use as a cemetery or burial place for the dead." [4] It is obvious therefore that cemetery associations were to hold lands for burial purposes only, and lands owned but not within the cemetery were to be sold. Section 8 which is entitled, "An Act to enable cemetery associations to sell and convey lands not required for burial purposes," provides the method for this sale. That this construction was intended by the legislature is evident from the subsequent enactment of section 35 et seq., Ch. 21, providing for the organization of cemetery associations, which included

section 40 permitting such associations to plat and dedicate its land, and to sell "lots in said cemetery for burial purposes only * * * ." [5]

■ The decisions of the Illinois courts further demonstrate lack of authority of the cemetery association, by virtue of section 8, to sell grounds within the cemetery for other than burial purposes. In Concordia Cemetery Association v. Minnesota & N. W. Railroad Co., 1887, 121 Ill. 199, 12 N.E. 536, the railroad was condemning land owned by the Cemetery Association but not used or platted as a part of the cemetery. The Association attempted to prove the value of the unused land as cemetery lots and contended that if they were not so valued it would be deprived of this property without sufficient compensation. The court stated in 121 Ill. at page 211, 12 N.E. at page 542,

"This is a misapprehension. Lands belonging to cemetery associations incorporated under the laws of this state, not suitable or required for burial purposes, may be sold under the provisions of the act approved

3. "An Act in relation to Cemeteries
 Section 1. [Now § 29] Be it enacted by the People of the State of Illinois, represented in the General Assembly: That all cemetery associations, or companies incorporated for cemetery purposes, by any general or special law of this State, may acquire by purchase, gift or devise, and may hold, own and convey for burial purposes only, so much land as may be necessary, not exceeding twenty acres, for use as a cemetery or burial place for the dead." Laws of Illinois, 1891, p. 86.

4. "29. May own only necessary land
 "All cemetery associations, or companies incorporated for cemetery purposes, by any general or special law of this State may acquire by purchase, gift or devise, and may hold, own and convey for burial purposes only, so much land as may be necessary for use as a cemetery or burial place for the dead." Ill. Rev.Stat., Ch. 21, 1957, as Amended by Act approved and in force April 3, 1895.

5. "40. May subdivide land and sell burial lots—Monuments to soldiers and sailors
 "Said Cemetery Association when so

organized may divide and lay out into lots, any real estate which it may acquire, which said lots shall be of suitable size for burial lots, and when any such land is laid out into lots as herein provided, a plat of the same shall be made and recorded in the recorder's office of the county in which said Cemetery Association is located; and said Cemetery Association shall have the right to sell to any person or persons a lot or lots in said cemetery for burial purposes only, and to convey to such person or persons said lot by a proper deed of conveyance, and the person or persons so purchasing said lot or lots shall have the right to use the same for the purposes for which purchased and as limited by the reasonable rules of such cemetery, but no such Cemetery Association shall make or enforce any rule prohibiting the erection of any monument or headstone on any such lot or lots as may be prescribed or provided by the United States or the State of Illinois for a soldier, sailor or marine having served in the army or navy of the United States or the State of Illinois." Ill.Rev.Stat., Ch. 21, 1957.

April 15, 1875." (Reference being to said § 8.)

In Mount Hope Cemetery Ass'n v. New Mount Hope Cemetery Ass'n, 246 Ill. 416, 421, 92 N.E. 912, 914, the court stated,

"When a proprietor of land plats the same into lots, blocks, avenues, and driveways for cemetery purposes and sells lots according to such plat for burial purposes, we think the proprietor of said cemetery retains the control over the cemetery grounds, subject only to the rights of the lot owners who have purchased lots, and that the title to the avenues and driveways in the cemetery remains in the original proprietor and his grantees, subject to the right of the purchasers of lots * * to use such avenues and driveways for the purpose of going to, and returning from and visiting said lots * * * ."

 Moreover, while the Cemetery Association, being the owner of the land on which the cemetery is located, might have a right to sell and convey the cemetery as a whole, it could do nothing which would interfere with the use of the grounds already platted as a cemetery. Davidson v. Reed, 1884, 111 Ill. 167. This drilling lease embraced driveways and unused lots, including a part of block "J" in which the plaintiffs' lot was located. These lands having been platted were dedicated to the purpose of burial only. Village of Villa Park v. Wanderer's Rest Cem. Co., 1925, 316 Ill. 226, 147 N.E. 104. The Cemetery Association is restricted in the use of its land so dedicated for burial purposes. City of Chicago v. Rose Hill Cemetery Ass'n, 1918, 285 Ill. 567, 569, 121 N.E. 222. In Brown v. Hill, 1918, 284 Ill. 286, 292–293, 119 N.E. 977, 980, the court said:

"Places of burial for the dead have been held in great reverence from the earliest biblical times. * * * Even though a purchaser * * * in a cemetery * * * may not acquire a fee simple title

but simply an easement, and must use it subject to and in accordance with the reasonable by-laws and rules of the cemetery, yet he has a property right in his lot which the law recognizes and protects from invasion, whether it be by a mere trespasser or from the unauthorized and illegal acts of the directors of the corporation itself. Moreover, his remedy is commensurate with his rights, and he may maintain either trespass for damages or obtain a remedy by injunction to enforce and uphold his rights whenever necessary. The right of possession will continue so long as the cemetery continues to be used for that purpose."

The Cemetery Association in the instant case, having no legal authority under the statute or the decisions to issue an oil and gas lease to portions of the cemetery, trespassed upon the property rights or easement of the plaintiffs as lot owners. The defendants, Allen Brothers, would have no more right to enter and drill for oil than the Association. An injunction should issue restraining the defendants from desecrating the cemetery. See Barker v. Hazel-Fain Oil Co., Tex.Civ.App. 1920, 219 S.W. 874, and Houston Oil Co. v. Williams, Tex.Civ.App.1933, 57 S.W. 2d 380.

 The defendants maintain that injunctive relief should not be granted; first, because there is an adequate remedy at law; and second, the plaintiffs, having waited about one and a half years before bringing this suit, are barred by laches. Since the defendants are continuing trespassers by illegally entering the cemetery and drilling for oil an injunction should issue to prevent multiplicity of suits. Mount Hope Cemetery Ass'n v. New Mount Hope Cemetery Ass'n, supra; 21 I.L.P. Injunctions § 34, p. 548. "The ends of justice require, in such case, that the whole wrong shall be arrested and concluded by a single proceeding." Cragg v. Levinson, 1909, 238 Ill. 69, 82, 87 N.E. 121, 125, 21 L.R.A.,N.S., 417. While the answers of the defendants do not specially allege laches as an affirma-

tive defense it would be of no avail had they done so under the circumstances here. The Cemetery Association illegally leased the premises for the exploration of oil, and Allen Brothers drilled the well and placed it in operation without the knowledge of the plaintiffs. The defendants had incurred their expenses prior to the plaintiffs' knowledge of the construction of the well. The well was completed about the first of August, 1956 and this suit was instigated October 22, 1957. Since this lapse of time is far short of the applicable statute of limitations [6] and the defendants were not misled by the plaintiffs' inaction, the plaintiffs should not be barred by laches from obtaining injunctive relief. See Burrall v. American Telephone & Telegraph Co., 1906, 224 Ill. 266, 79 N.E. 705, 8 L.R.A., N.S., 1091; Stejenka v. National Beverage Co., 1923, 230 Ill.App. 27.

 The defendants next contend that the court does not have jurisdiction for the reason that the amount involved in this controversy is less than $3,000 since the oil well produces but one barrel of oil per day, and could be plugged for $1,000. The plaintiffs made the necessary allegation in their complaint that the amount in controversy exceeds, exclusive of interest and costs, $3,000. Defendants overlook the fact that it is the desecration of the cemetery as a whole that is involved in this case and no doubt the cemetery could be valued at an amount greater than $3,000. Chew v. First Presbyterian Church, D.C.Del. 1916, 237 F. 219, 241. The plaintiffs paid $112.50 for three-fourths of a lot. There are approximately 1,000 lots in the cemetery. The court therefore finds that it has jurisdiction of the subject matter and of the parties.

Defendants further contend that there can be no recovery for mental anguish

suffered by plaintiffs for the reason that there was no physical injury. In support of their position the defendants cite Tomasi v. Donk Bros. Coal Co., 1912, 257 Ill. 70, 100 N.E. 353; Fitzgerald v. Davis, 1925, 237 Ill.App. 488; McCormick v. Louis Weber & Co., 1914, 187 Ill. App. 290; Pittsburg, C. C. & St. L. Ry. Co. v. Story, 1896, 63 Ill.App. 239.

 Since jurisdiction in this case rests upon the diversity of citizenship, the law of the forum, Illinois, is determinative of the substantive issues. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. This includes the Illinois law of conflicts. Smith v. Dravo, 7 Cir., 1953, 203 F.2d 369. Where, as here the complaint sounds in tort, the Illinois law of conflicts applies the law of the place of alleged wrong. Smith v. Dravo, supra.

 The cases cited by the defendants are not applicable to the facts in this case. In a simple negligence action under the rule in Illinois the plaintiff is not entitled to recover for mental anguish unless there is physical contact. In the instant case there was a continuing trespass upon the plaintiffs' easement. The wrongful act of the defendants divested the cemetery of its sacred and sentimental character thus depriving plaintiffs of their right to visit the grave of their deceased son in reverence and solace amid surroundings proper to a place devoted to final and peaceful repose of the dead. See Brown v. Hills, supra. The natural and probable consequence of this desecration of the cemetery would result in mental anguish to those who had the right to visit the grave of their deceased loved ones. In Illinois there is a recognized breaking away from the rule permitting damages for mental anguish only where there is bodily injury. In Eick v. Perk Dog Food Co., 1952, 347

---

6. Ch. 83, § 1, Ill.Rev.Stat., 1957.
 "§ 1. No action to recover land after twenty years
 "No person shall commence an action for the recovery of lands, nor make an entry thereon, unless within twenty years after the right to bring such action or make such entry first accrued, or within twenty years after he or those from, by, or under whom he claims, have been seized or possessed of the premises, except as now or hereafter provided in subsequent sections of this Act."

Ill.App. 293, at page 299, 106 N.E.2d 742, at page 745, the court permitted recovery for mental anguish suffered as the result of invasion of the rights of privacy, and the court said:

"The common law, it is said, grants recoveries only for injuries either to the person or the purse and not for mere mental suffering. This reasoning no longer accurately portrays the state of the law."

The court then proceeded to cite many decisions of the Illinois courts and from other jurisdictions where substantial damages were awarded for injuries to the feelings, and concluded " '[t]here is a definite trend today in the United States to give an increasing amount of protection to the interest in freedom from emotional distress.' " Eick v. Perk Dog Food Co., supra, 347 Ill.App. at page 302, 106 N.E.2d at page 746. In Mensinger v. O'Hara, 1914, 189 Ill.App. 48, the court recognized the right to recover for mental anguish where a funeral director, in preparing a body for interment, cut the hair of the plaintiff's deceased wife to such an extent that the body could not be displayed for viewing, and based recovery on the fact that the defendant invaded the husband's right of possession of his wife's body. Since the Illinois courts have expressed their views in such a manner this court is of the opinion that if the facts in this case were presented to the Illinois Supreme Court it would allow the plaintiffs to recover damages for mental anguish resulting from the wrong perpetrated by the defendants. See Yoder v. Nu-Enamel Corporation, 8 Cir., 1941, 117 F.2d 488. In Humphreys v. Bennett Oil Corp., 1940, 195 La. 531, 197 So. 22 the court allowed recovery for mental anguish where an oil well was drilled within the cemetery. The courts of other states have permitted recovery for mental anguish in analogous situations. 172 A.L.R. 577.

Neither plaintiffs nor defendants have raised the question as to whether the Cemetery Association might be immune from tort liability because it is a charitable institution. See Moore v. Moyle, 1950, 405 Ill. 555, 92 N.E.2d 81; Parks v. Northwestern University, 1905, 218 Ill. 381, 75 N.E. 991, 2 L.R.A., N.S., 556. The Graceland Cemetery Association may be a charitable institution. See Catholic Bishop of Chicago v. Murr, 1954, 3 Ill.2d 107, 120 N.E.2d 4; Bourland v. Springdale Cemetery Ass'n, 1895, 158 Ill. 458, 42 N.E. 86. Since the Cemetery Association has not interposed the defense it may be sued and judgment obtained against it. Mariabia v. Mary Thompson Hospital, 1923, 309 Ill. 147, 140 N.E. 836. The right of the plaintiffs to collect a judgment from any funds or cemetery land held in trust is questionable. However, this issue is not involved in this decision.

The court finds that the defendants, the Graceland Cemetery Association of Albion, Illinois, and James and Harvey Allen, partners, doing business as Allen Brothers, are guilty as charged in the plaintiffs' complaint; and that the plaintiffs are entitled to damages, Mary Bushers in the amount of $3,000, and Barney Bushers in the amount of $100. Judgment for these amounts will be entered herein against both defendants with costs. Order shall also issue restraining the defendants from continuing the operation of the oil well and requiring the removal of the equipment from the cemetery. The facts and conclusions of law stated in this opinion may stand for findings of fact and conclusions of law required by Rule 52, Fed.Rules Civ. Proc., 28 U.S.C.A. Proper order will be submitted.